## COMMISSIONER OF INTERNAL REVENUE v. KOLB.
### No. 8782.

Circuit Court of Appeals, Ninth Circuit.
Nov. 30, 1938.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Maurice J. Mahoney, and L. W. Post, Sp. Assts. to Atty. Gen., for petitioner.

Melvin D. Wilson, of Los Angeles, Cal., (Homer Hendricks, of Washington, D. C., of counsel), for respondent.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

This is a review, on the petition of the Commissioner of Internal Revenue, of a decision by the Board of Tax Appeals holding the Commissioner had improperly assessed a tax upon what the Commissioner contends was a taxable gain resulting from the exchange of certain stock of the General Baking Corporation of Maryland (hereinafter called the Maryland Corporation) held by the respondent Kolb for stock and securities, certain debenture bonds of the General Baking Company of New York (hereinafter called the New York Company) and certain money. The exchange was the consummation of a plan presented by a joint committee of the Maryland and New York corporations and adopted and carried out by the two corporations and Kolb and his associate stockholders of the Maryland Corporation.

Kolb's return to the Commissioner had reported no income from the gain from the stocks and securities and treated $3286, a part of the cash, as a dividend from the stock of the New York Company—that is not as ordinary income but subject only to the surtax. The Commissioner held that the gain from the stock, securities and cash was taxable, as capital gain from the exchange for stock held over two years. He deducted the cash dividend from Kolb's return of his dividends on corporate stock and included its amount with that of the stocks and securities and assessed the gain on all three at 12½ percent.

Kolb's petition to the Board admitted that he had received the cash as well as the stocks and securities in an exchange in the process of the liquidation on the dissolution of the Maryland Corporation, but claimed that, though a liquidation, the taxation on all three was to be determined under the exemptive provision for corporate reorganization in the Revenue Act of 1928. The Commissioner claimed before the Board that there was not a reorganization contemplated by that Act. The pertinent sections of the Revenue Act are Section 115, providing for taxation of distributions in liquidation, and Section 112, providing for exemptions from taxation on corporate reorganizations, the exemptions being incorporated in Section 115 by reference. The parts of the sections relevant here are:

"§ 115. * * *

"(c) *Distributions in liquidation.* Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. * * *. 45 Stat. 822, 26 U.S.C.A. § 115 note.

"Sec. 112. *Recognition of Gain or Loss.*

"(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) Exchanges solely in kind.—

"* * * * * *

"(3) *Stock for stock on reorganization.*—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, *exchanged solely* for stock or securities in such corporation or in another corporation a party to the reorganization. (Italics supplied.)

"* * * * * *

"(c) *Gain from exchanges not solely in kind.*—(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

"* * * * * *

"(i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of an-

other corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

" (j) *Definition of control.*—As used in this section the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation." 45 Stat. 816, 26 U.S.C.A. § 112.

The Board's findings are:

" * * * A Maryland corporation held practically all of the common stock of a New York corporation. The latter owned and operated a chain of baking plants. Pursuant to a plan, the Maryland corporation transferred substantially all of its assets, including its principal asset, the common stock of the New York corporation, to the New York corporation. Stockholders of the Maryland corporation surrendered their stock in that company in exchange for stock and bonds of the New York corporation and a small amount of cash. The Maryland corporation was dissolved, and the New York corporation continued to operate the baking business. After the former stockholders of the Maryland corporation had received the stock of the New York corporation, they owned at least 80 per cent of its voting stock and there was no other class of stock outstanding."

The Board concluded "that there was a reorganization within the definitions contained in (A) and (B) of section 112(i) (1) of the Revenue Act of 1928," 45 Stat. 816, 26 U.S.C.A. § 112, and gave its decision "that there is no deficiency for the year 1931".

If the exchange be in such a reorganization, the gain from the stocks and securities received by the taxpayer is not subject to taxation and the deficiency assessed is invalid so far as it rests on their value.

The Commissioner claims that the evidence does not support the Board's findings on the reorganization and that the Board erred in holding that there was no deficiency from the gain from the stocks and securities.

Section 112 (c) (1), 26 U.S.C.A. § 112 (c) (1), requires the cash "shall be recognized" as income, even though it be received in exchange in a reorganization. The Board's holding that there was no deficiency as to all three items, hence as to the cash, is challenged by the Commissioner, who claims that it is a liquidating dividend and hence subject to the normal tax —though he had assessed it as a capital gain, subject solely to the 12½ percent tax.

**(1) There was a tax free reorganization and hence no taxable gain from Kolb's acquisition of the stocks and securities.**

■ Kolb contends that we have not the power to reverse the order because there is no specific assignment of error that the findings are not supported by the evidence. We have held that the general assignment here that "The Board erred in not sustaining the deficiency asserted by the Commissioner of Internal Revenue in his deficiency notice" is sufficient to raise the question. Burnet v. San Joaquin Fruit etc. Co., 9 Cir., 52 F.2d 123, 126.

■ The probative facts were stipulated. The transaction here involved occurred in 1931. At the beginning of that year, the outstanding capital stock of the New York Company consisted of 90,775 shares no par value $8 cumulative preferred and 429,719 shares no par value common stock. The Maryland Corporation owned all but 313 shares of the outstanding common stock and none of the preferred stock of the New York Company. The shares of both classes of the New York stock had equal voting privileges. In round figures the ratio of voting power of the common to the preferred was 429 to 90.

At the beginning of 1931, the outstanding capital stock of the Maryland Corporation consisted of 992,980 shares no par value $6 cumulative preferred and 3,472,360 shares no par value common stock. The Maryland common's voting power thus controlled the New York Company through the election of the Maryland board of directors who voted the New York common. The principal asset of the Maryland Corporation was its stock in the New York Company and its business consisted of the own-

ership of such stock, the receipt of dividends thereon and the declaration and payment shortly thereafter of dividends to its own stockholders.

Part of the general plan entered into by the Maryland Corporation and the New York Company provided for a reorganization of their corporate structures by a reclassification of the common stock of the Maryland Corporation and of the New York Company so that the outstanding shares of the Maryland Corporation would approximately equal on a share for share basis its holding of the common stock of the New York Company. Pursuant to this plan, the New York Company changed its outstanding 429,719 shares of no par common stock into 1,594,798.93594 shares of $5 par value common stock, of which the Maryland Corporation as holder of 429,406 shares of common stock of the New York Company was entitled to receive 1,593,-637.31156. The result of this capital reorganization of the New York Company was to increase the ratio of voting power of the common over the preferred from 429 to 90 to 1594 to 90.

Dividends had not been paid for several years on the Maryland cumulative preferred stock. To satisfy the Maryland preferred holders, the plan also provided for a change in the capital structure of the New York Company. Debenture bonds in excess of $2,000,000 were created and to that extent altering its surplus. After the reclassification of the New York common, dividends on it were declared of these debenture bonds, of which the portion distributable to the Maryland Corporation in turn should be given to its preferred holders in discharge of the arrearage of preferred dividends.

The Maryland preferred also was to receive 150 shares of the reclassified New York common for each 100 shares of Maryland preferred. The holders of the Maryland common were to receive 3 shares of the reclassified New York common for each 100 shares of the Maryland common. This alteration of stock relationship caused the ultimate control of the New York corporation to pass from the Maryland common stock to the Maryland preferred stock.

Prior to the exchange, the Maryland common stock controlled the Maryland Corporation which in turn controlled the New York Company through its ownership of a majority block of the latter's voting stock. After the exchange, the former holders of the Maryland preferred directly controlled the New York Company by their ownership of approximately 90 per cent. of the latter's voting stock then outstanding.

The Maryland Corporation amended its charter to reclassify its total of 3,472,360 shares of outstanding common stock into 1,593,640.80 shares of common stock, but the record shows the Maryland stockholders retained their original certificates. No change was made as to the non-par preferred stock of either corporation.

The plan further provided for assumption of all the Maryland Corporation's debts, including those for taxation, and for the transfer of physical assets and property not easily distributable of the Maryland Corporation to the New York Company. These had the substantial value of $61,580 though but a very minor part of the Maryland Corporation's assets.

The Maryland Corporation transferred the physical assets and certain policies insuring the lives of its officers to the New York Company. The stipulated facts do not show the exact date on which these physical and other assets were transferred, but the statement of assets and liabilities of the Maryland Corporation in its petition for dissolution does not list them and the Board was warranted in drawing the inference upon which it made its finding that the transfer had been made by the Maryland Corporation. Thus one corporation transferred to another corporation a part of its assets in compliance with Section 112 (i) (l) (B), 45 Stat. 816, 26 U.S. C.A. § 112.

Thereafter, in the proceedings for the dissolution of the Maryland Corporation, the court appointed a receiver to liquidate its properties, and ordered him to carry out the plan and to surrender the New York Company's former shares and receive its reclassified shares and the dividends on them of debentures and cash.

The taxpayer had surrendered all his Maryland Corporation preferred and common stock to a depositary, the Bankers Trust Company of New York, to be exchanged for the reclassified common stock, debentures and cash of the New York Company and which he subsequently did receive. The conduit through which the stock and securities were exchanged was the Bankers Trust Company of New York City which the Maryland court had made the agent of the receiver to carry out the exchange in liquidation.

The liquidating distribution was carried out by the receiver through his New York agent. The Maryland stockholders surrendered to him their Maryland stock for cancellation on the records of that company and received from him their New York Company common stock with its 80 percent control of the New York Company.

We regard as irrelevant that the Maryland stockholders acquired none of the New York voting preferred. There was no class of stock in the New York Company not having voting power.

The stipulated facts thus show that there was a reorganization within Section 112 (i) (1) (B). The capital and corporate structures of both corporations were substantially altered. There was a transfer of assets from the Maryland Corporation to the New York Company under a plan of reorganization whereby "immediately after" the Maryland Corporation held the 80 percent stock control of the New York Company under the reorganization agreement a "single transaction", to distribute the stock to its stockholders who would then have direct control of the New York Company, whose earnings constitute the purpose of their investment.

■ These being the probative facts showing they warrant the finding and conclusion above suggested, we consider whether the Board has made an equivalent finding, since we have no power to make findings and can but reverse if the findings are inadequate. Helvering v. Rankin, 295 U.S. 123, 131, 132, 55 S.Ct. 732, 79 L.Ed. 1343.

The Board's findings, supra, include a finding that "A Maryland corporation held practically all of the common stock of a New York corporation. The latter owned and operated a chain of baking plants. Pursuant to a plan, the Maryland corporation transferred substantially all of its assets, including its principal asset, the common stock of the New York corporation, to the New York corporation".

The finding is too broad. The evidence does not show that "substantially all" the assets of the Maryland Corporation were transferred to the New York Company, for the New York common was surrendered for the issue instanter of a reclassified substitute. There was hence no reorganization under section 112(i) (1) (A), 45 Stat. 816, 26 U.S.C.A. § 112.

However, since the "substantially all" is inclusive of the lesser transfer of the

$61,000 of undistributable assets, the finding is to that extent supported by the evidence and satisfies the requirement of section 112(i) (1) (B) of a transfer of "a part of its assets." "Immediately after", as before, there was the same more than 80 per cent stock control of the New York Company.

The Commissioner's brief properly contends that all the component steps of the plan shall be regarded as a "single transaction". The taxpayer agreed with the Commissioner in this, and the cause was argued and submitted on this agreement. Hence "immediately after" the transfer the stockholders of the Maryland Corporation, as found by the Board, "owned at least 80 percent of its [the New York Company's] voting stock and there was no other class of stock outstanding".

We hold that the Board's findings support to this extent its conclusion and that it committed no error in holding "that there was a reorganization within the definitions contained in * * * (B) of section 112(i) (1) of the Revenue Act of 1928".

■ There is no merit in the Commissioner's contention that the Board of Tax Appeals erred in failing to treat the 10-year debentures as an ordinary dividend to the Maryland Corporation's stockholders. These debentures were received as part of the single transaction the ultimate consequence of which was that the taxpayer received in exchange for his stock interest in the Maryland Corporation, including accrued dividends thereon, stock and securities (the debentures) in the New York Company. There is continuity of the taxpayer's interest in the corporate enterprise both by virtue of the stock and the 10-year bonds of the New York Company. We hold that the Board's decision that no deficiency was chargeable to the taxpayer either from receipt of the stock or the debentures is correct.

■ This seems one of the conclusions reached by the Fourth Circuit in Helvering v. Leary, 93 F.2d 826, though we do not know that the stipulated facts are the same in this as in that review. The Commissioner, admitting the weight of the Leary Case, raises here a contention, not suggested in his answer to Kolb's petition to the Board, that the reorganization plan is without a business purpose and a tax evasion, as in the cases of Gregory v. Helvering, 293 U.

926

S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L. R. 1355, and Minnesota Tea Co. v. Helvering, 302 U.S. 609, 58 S.Ct. 393, 82 L. Ed. 474. There is no merit in the contention that the reorganization did not have a business purpose. The facts stipulated show it had many for both corporations and for both the preferred and common stockholders of both corporations.

First of the business purposes of the proposed plan was the diminishing of the relative voting power of the New York preferred stockholders as against the common stockholders by the very great increase of the number of common shares each with voting power while there was no increase in the voting power of the New York preferred.

Second. There was the shift of control of the New York Company from the Maryland Corporation, a holding company with a single block of the New York Company's common stock, having the voting control of the latter company, to the Maryland shareholders individually who thus would deal directly with the corporation having the management of their investment. Proposed legislation in the Congress regulating holding companies would indicate that such direct control as distinguished from holding company control is regarded as not without social and economic merit.

Third. The shifting of the control of the New York Company from the Maryland common stockholders to the holders of the Maryland preferred.

Fourth. The substantial alteration of the financial structure of the New York Company by its issuance of over $2,000,000 of debenture bonds, thereby reducing its surplus to that extent.

Fifth. The discharge of the accumulated dividend obligation to the Maryland preferred stockholders by their receipt of the over $2,000,000 in debenture bonds in the New York Company, shown by the record to have an immediately realizable value in the New York market.

Sixth. The transfer of the assets from the Maryland to the New York Company and the assumption by the latter of the former's indebtedness.

Seventh. The certainty of an immediate dividend to the Maryland common and the stipulated prospect of further dividends on the New York common, with no likelihood in the prior existing conditions of the business of the New York Company of any dividends reaching Maryland common for which the New York common was exchanged.

Eighth. The removal of the block of Maryland preferred standing between Maryland common and the earnings of the New York common.

Ninth. The removal of the likelihood that the Maryland common would be taken off the list of the New York Stock Exchange and the certainty that the New York reclassified common acquired by the Maryland stockholders would be so listed.

Tenth. The saving of expense and the abolition of complexity of organization by the maintenance of a single rather than a dual corporate structure.

In view of these ten business purposes, we hold that the reorganization is not within the principles established in the Gregory and Minnesota Tea Cases.

■ Where for legitimate business purposes a person has a choice of conducting his business transactions without tax liability, such a liability does not arise simply because it would have arisen if another process had been chosen. Jones v. Helvering, 63 App.D.C. 204, 71 F.2d 214, 217, cited with approval in Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L. Ed. 596, 97 A.L.R. 1355; Fulton Oil Co. v. Commissioner, 9 Cir., 81 F.2d 330, 331; Commissioner v. Neaves, 9 Cir., 81 F.2d 947, 948, 949; Chisholm v. Commissioner, 2 Cir., 79 F.2d 14, 15, 101 A.L.R. 200; Sawtell v. Commissioner, 1 Cir., 82 F.2d 221, 222; cf. Holmes, J. in Superior Oil Co. v. Mississippi, 280 U.S. 390, 395, 396, 50 S.Ct. 169, 74 L.Ed. 504. These cases are clearly applicable here.

■ **(2) There is no deficiency with regard to the tax on the $3286 cash dividend from the New York Company.**

The Commissioner claims that the amount of this dividend is money received under Section 115 (c) in "payment" for the taxpayer's surrendered stock. The surrendered stock was a capital investment held by Kolb for over two years and so recognized by the Commissioner in his deficiency letter, and the deficiency assessment included the money as a part of the capital gain.

Although there was a reorganization under Section 112, its subsection (c) (1) is imported into section 115(c). That subsection provides:

"(c) *Gain from exchanges not solely in kind.*—(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the *gain,* if any, to the recipient *shall be recognized,* but in an amount not in excess of the sum of such money and the fair market value of such other property." (Italics supplied.)

Hence the cash gain must be "recognized" as income and the Treasury Regulations give the taxpayer an option to choose the taxable character of its recognition.

Treasury Regulations 74, Art. 625, provides in its second paragraph:

"The gain or loss to a shareholder from a distribution in liquidation is to be determined, as provided in section 111 and article 561, by comparing the amount of the distribution with the cost or other basis of the stock provided in section 113 and articles 591-604; but the gain or loss will be recognized only to the extent provided in section 112 and articles 571-580. Any gain to the shareholder may, at his option, be taxed as a capital net gain in the manner and subject to the conditions prescribed in section 101 and articles 501–503. * * *".

The taxpayer claims that the $3286 is an ordinary corporate dividend paid to him as a stockholder in the New York Company after the consolidation was completed and not in the liquidating exchange for his Maryland stock. The taxpayer's petition precludes him from asserting this option. The prayer of his petition is:

"(1) That a 'reorganization' of the General Baking Corporation and/or the General Baking Company occurred within the meaning of Section 112 (i) (1), Revenue Act of 1928, and that the *tax results of the exchange* of the stock in the *Corporation* for stock and securities in the Company, and *money,* are to be determined under Section 112(b) (3) and Section 112(c);

"(2) That in any event no gain was recognizable on account of the receipt of stock and debentures in the Company;
* * * * * * *".
(Italics supplied)

The position taken in the taxpayer's petition to the Board cannot be changed here. We are bound to hold the "money" as consideration for the exchange of the stockholder's capital asset, the stock in the Maryland Corporation, and not as a dividend paid him by the New York Company after the reorganization was completed.

[8] Nevertheless, though received as a distribution in reorganization, the "money" may be taxed "as a dividend" if the distribution has the *"effect* of the distribution of a taxable dividend". If it has that "effect" it is subject to the surtax but not the normal tax. Treasury Regulations 74, Art. 575, provides:

"* * * If a distribution of property or money in the course of a reorganization is otherwise within the provisions of this paragraph, but has the effect of the distribution of a taxable dividend, there shall be taxed to each distributee (1) as a dividend, such an amount of the gain recognized under this paragraph as is not in excess of the distributee's ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913, and (2) as a gain from the exchange of property, the remainder of the gain recognized under this paragraph."

The Maryland Corporation was a holding company and its stockholders received their dividends from the dividends paid to the Maryland Corporation by the New York Company.

The Commissioner's position here is stated in his brief that "this dividend should be viewed as a part of the distribution in liquidation to the stockholders of the old Maryland Corporation".

What was distributed from the Maryland Corporation was a dividend declared by the New York Company, payable to the Maryland Corporation as the stockholder of record at a time prior to the distribution of its assets. Hence that distribution has the "effect of the distribution of a taxable dividend".

The taxpayer returned this money as a dividend on corporate stock not subject to normal tax, and paid his surtax on that basis. There is no more due from him.

Since there is no deficiency of tax respecting either the stocks and securities or the cash, the order of the Board of Tax Appeals is affirmed.

Affirmed.