## HELVERING, Commissioner of Internal Revenue, v. SCHOELLKOPF.

### No. 79.

Circuit Court of Appeals, Second Circuit.
Dec. 5, 1938.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Asst. Attys. Gen., for petitioner.

Kenefick, Cooke, Mitchell, Bass & Letchworth and Ernest J. Brown, all of Buffalo, N.Y. (John L. Kenefick and Ralph M. Andrews, both of Buffalo, N.Y., of. counsel), for respondent J. F. Schoellkopf.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The Commissioner appeals from an order of the Board of Tax Appeals, expunging part of a deficiency, assessed by him against the respondent upon his income tax for the year, 1931. The taxpayer was the holder of preferred shares in the General Baking Company of Maryland, a holding company, whose assets consisted only of the common shares of a New York company of the same name, and odds and ends of chattels and choses in action, valued at about $61,000. The directors of the Maryland company decided to dissolve it by a proceeding in court and in accordance with the following plan. The New York company had issued common shares without par value and preferred shares: the preferred were in the hands of the public; substantially all the common were held by the Maryland company. The Maryland company itself had issued both common and preferred shares—the preferred dividends being cumulative and in arrears. The plan provided that the Maryland company should transfer to the New York company all the shares in that company which it owned; that the New York company should then issue to the Maryland company in place of them about three times as many new common shares with a par value of five dollars. It should also declare a dividend on the old shares in the form of five and one half per cent debentures which it should deliver to the Maryland company. Finally, it should declare a dividend of ten per cent—fifty cents—upon the new shares. The Maryland company after receiving these securities should transfer to its own common shareholders three shares of the new New York company shares for one hundred of its own, and to its preferred shareholders one and a half shares and three dollars in debentures for every preferred share. The Maryland company should also transfer the miscellaneous assets to the New York company; the total assets of that company were over $96,000,000. All this was duly carried out on both sides, and the Maryland company was formally dissolved by order of the court. The Commissioner held that the shares and debentures received by the taxpayer in exchange for his preferred shares in the Maryland company were taxable under § 115(c), 26 U.S.C.A. § 115, as a payment in liquidation. The Board held that the transaction was a reorganization under § 112(i) (1)·(A) and § 112(i) (1) (B), 26 U.S.C.A. § 112, and that no gain ought to be "recognized".

Since there was no pretence of a formal merger or consolidation in the narrower sense, the application of subdivision A to the case at bar depends upon whether the transaction fell within the parenthetical clause. This calls for the acquisition by one company of a majority of the voting shares and of all other shares of another company, or of substantially all the properties of another. The taxpayer argues that the New York company acquired all the properties of the Maryland company when that company transferred to it its own shares and the miscellaneous assets. As to the shares we do not agree; the shares of a company, when transferred to itself cannot properly be regarded as property acquired; the shares are merely extinguished. Squibb & Sons v. Helvering, 2 Cir., 98 F.2d 69. But even though this were not so, and the shares could be regarded as property acquired by the New York company, that company was under contract to return them, and did not acquire them.

To this the taxpayer answers that what was returned was not the old shares, but new ones, which were the price of the old; having a par value and a larger voting power relative to the preferred shares, they were to be regarded as something quite different from their predecessors. No doubt the question is one of degree, but we think that the two issues were so much alike as to be substantially the same. Each represented the entire beneficial ownership of the New York company—barring the preferred shares—and to give shares a par value has no effect except upon dividends. It is of course possible to imagine cases where the change in voting power might become important, but these two were remote and unlikely. We therefore regard the transfer of the shares as mere form; indeed nobody has been able to put his finger on any reason why it was necessary for any purpose. Subdivision A did not cover the transaction.

Subdivision B does not however require that a company shall transfer "substantially all its property" to another; it is satisfied, if only "a part" be transferred. There can be no doubt that no gain could have been "recognized" to the Maryland company from the transfer of the miscellaneous assets, even if it had received a price for them, which it did not. The transaction was therefore a "reörganization", and the question is how much it carried in its train. The taxpayer's argument is that the exchange by the Maryland shareholders of their shares in that company for shares of the New York company fell within § 112 (b) (3), 26 U.S.C.A. § 112(b) (3), because it took place in pursuance of the "plan of reörganization", which included as an incident the transfer of the miscellaneous assets of the New York company. Certainly, the liquidation of one of the companies, a party to a reörganization, does not prevent the reörganization from being within the statute: § 115(c) implies as much, and the courts have so decided. Ahles Realty Corp. v. Commissioner, 2 Cir., 71 F.2d 150; Helvering v. Winston Bros. Co., 8 Cir., 76 F. 2d 381; Gross v. Commissioner, 5 Cir., 88 F.2d 567. We cannot therefore say that the reörganization was not real within Gregory v. Helvering, 293 U.S. 465, 55 S.

Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, because one of the companies disappeared. Nor can we say that it was only a device to escape taxation, assuming that that would be relevant anyway: so far as appears, the transfer of the miscellaneous assets to the New York company was not interjected for other than business reasons. It is indeed somewhat startling to conclude that the taxability of the transaction depends upon such a trivial incident, but that cannot be a determining consideration. If for example the holding company had held large properties, but had wished to dissolve, we should have no reluctance in reaching the same result. There would then have been an indubitable reörganization, coupled with a liquidation; and the old owners—then shareholders of the subsidiary—would simply be holding all the assets directly instead of holding some part of them through the parent's ownership of the subsidiary's shares. Such a change was within the intent of Congress; and if so, the fact that the amount of property transferred to the subsidiary was very small indeed cannot make a difference, for the statute makes no distinction based on size. The truth is that the liquidation of a holding company is one of those corporate changes which might properly have been made exempt anyway; and indeed §§ 371, 372 and 373 of the Act of 1938, 26 U.S.C.A. §§ 330–330b, have now made it so in certain cases. The underlying purpose of the exemptions in § 112 is to disregard corporate manipulations which do not substantially affect the shareholders' interest in the properties. Apparently the liquidation of a holding company was not thought of as such a case, and for that reason it was made taxable; but we need not wince when this hiatus is filled by what appears to be an insufficient occasion. The Fourth and Ninth Circuits have reached the same conclusion. Helvering v. Leary, 4 Cir., 93 F.2d 826; Helvering, Commissioner, v. Kolb, 9 Cir., 100 F.2d 920.

The debentures turned over as part of the transaction offer no further difficulties, and the dividend of fifty cents upon the new shares was plainly an ordinary, not a liquidating, dividend.

Order affirmed.