## COMMISSIONER OF INTERNAL REVENUE v. WHITAKER.

### No. 3345.

Circuit Court of Appeals, First Circuit.

Dec. 28, 1938.

Louise Foster, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., on the brief), for the Commissioner.

Ralph E. Tibbetts, of Boston, Mass. (Philip T. Doherty, of Boston, Mass., on the brief), for Whitaker.

Before BINGHAM and WILSON, Circuit Judges and McLELLAN, District Judge.

McLELLAN, District Judge.

This petition to review a decision of the Board of Tax Appeals relates to a transaction whereby in 1931 the taxpayer, Stella S. Whitaker, surrendered 1,000 shares of $6 preferred stock of the General Baking

Corporation, a Maryland corporation, and received 1,500 shares of common stock of the General Baking Company, a New York corporation, $3,000 face value 5½ per cent debenture bonds of the same company, $41.25 in cash, representing accrued interest on such debentures, and a further cash payment of $750. The Board of Tax Appeals held that the stock was surrendered pursuant to a plan of reorganization and that no gain was to be "recognized" under the Revenue Act of 1928, 45 Stat. 791. The Commissioner contends that what took place was merely the liquidation of the Maryland corporation, and that the amounts received are taxable accordingly.

The summarized facts follow:

In 1923 the taxpayer received as a gift from her father 500 shares of the common stock of the General Baking Company, a corporation organized in 1911 under the laws of New York for the purpose of operating a large number of baking plants. In October, 1925, and thereafter until the transaction of 1931 mentioned below, the outstanding stock of this corporation, hereinafter referred to as the New York Company, consisted of 90,775 shares of $8 cumulative preferred stock and 429,719 shares of common stock. Both classes of stock had equal voting rights. In 1925, the General Baking Corporation, hereinafter referred to as the Maryland Corporation, was organized under the laws of Maryland for the purpose of acquiring the common stock of the New York Company, and it eventually acquired 212,308 shares of the common stock of the New York Company for cash and 217,098 shares in exchange for its own stock. At this time the taxpayer exchanged her 500 shares of the common stock of the New York Company for 1,000 shares of Class A and 3,000 shares of Class B stock in the Maryland Corporation. In 1928, as a result of a recapitalization of the Maryland Corporation, the taxpayer received 1,000 shares of $6 no par value cumulative preferred stock of the Maryland Corporation and 3,500 shares of no par value common stock of the Maryland Corporation. Prior to 1931, the taxpayer sold all her common stock, so received, so that at that time, she held only the 1,000 shares of the $6 cumulative preferred stock.

Early in 1931, the directors of the Maryland Corporation decided that the continued existence of the Maryland holding company and the New York operating company was unwieldy and against the best interests of both. On January 10, 1931, a letter signed by the members of a "Committee for Capital Readjustment" representing the directors and stockholders of the Maryland Corporation and the directors of the New York Company was sent to all the stockholders of the Maryland Corporation. The letter recommended a plan for capital readjustment. It was proposed that the holding company should be dissolved, that accrued and unpaid dividends on preferred stock of the Maryland Corporation should be met by an issue of 5½ per cent debenture bonds of the New York Company, and that the common stock of the New York Corporation held by the Maryland Corporation should be distributed among the stockholders of the latter. It was proposed that holders of the $6 preferred stock of the Maryland Corporation, of whom the taxpayer was one, should be entitled to receive for each 100 shares held, 150 shares of new common stock of the New York Company, plus "for all dividends then accrued and unpaid, Ten Year 5½% Sinking Fund Gold Debentures of General Baking Company, with interest thereon adjusted and accruing from January 1, 1931 * * * at the rate of $300 principal amount thereof on each 100 shares of stock." Holders of common stock were to receive three shares of new common stock for each 100 shares held. It was stated that upon the consummation of the plan it was proposed to inaugurate quarterly dividends on the new common stock of the General Baking Company at the annual rate of $2 per share and that it was hoped that the plan could be consummated promptly so that the initial dividend might be paid April 1, 1931.

On the same date, a deposit agreement was executed purporting to be between certain named individuals "as a Committee for Capital Readjustment, and such holders of shares of stock of" the Maryland Corporation as might later become parties to the agreement by depositing their shares in the manner therein provided. The Bankers Trust Company of New York was designated as depositary. The agreement referred to the circular letter of January 10, 1931, and provided that certificates of deposit should entitle the holders thereof to receive in lieu of deposited Maryland preferred stock or Maryland common stock, securities of the New York Company in full satisfaction of claims with respect to

shares in the Maryland Corporation on the basis set forth in the plan.

On February 5, 1931, an agreement was made between the New York Company and the Maryland Corporation, in furtherance of the consummation of the plan proposed in the letter of January 10, 1931. By Article III of this agreement, the Maryland Corporation agreed to amend its Certificate of Incorporation so that (a) it should have one class of stock, consisting of 7,000,000 shares of common stock without par value, of which 1,593,640.8 shares should be issued and outstanding, and (b) its 3,472,360 issued shares of preferred stock should be reclassified into 104,170.8 shares without par value common stock, and (c) the 992,980 issued shares of preferred stock should be reclassified into 1,489,470 shares of common stock without par value. It will be seen that the Maryland Corporation would then have outstanding the same number of shares of its common stock which its shareholders would be entitled to receive of the new stock of the New York Company under the terms of the proposed plan.

By Article II of, the agreement, the New York Company agreed to amend its certificate of incorporation so that its 429,-719 shares of common stock outstanding would be changed into 1,594,798.93594 shares of par value $5 common stock. Of this the Maryland Corporation, as stockholder, would be entitled to receive 1,593,-637.31156 shares. It was further agreed in a later article that the New York Company should transfer the extra three and a fraction shares to make the number equal.

The agreement provided that after the reclassification of stock in both companies had been completed, the Maryland Corporation should "upon its dissolution or as an incident thereof (1) distribute to its stockholders pro rata the shares of common stock of the Company as changed and reclassified thereby effecting the distribution of the shares of the Company desired by it, and (2) transfer to the Company such items of its property as shall not have been realized upon or such as shall not be readily susceptible of distribution * * *." In consideration therefor, the New York Company agreed to assume the Maryland Corporation's debts and to declare a dividend on its stock (the old stock apparently) up to but not exceeding $2,981,112.22 payable in its Ten Year 5½% debenture bonds, said dividend to be up to but not exceed-ing an amount necessary to produce $3 face value per share of the preferred stock of the Maryland Corporation. The Maryland Corporation agreed to distribute these bonds pro rata to the holders of its preferred stock.

The New York Company agreed to issue its new stock upon the request of the Maryland Corporation to the holders of the preferred and common stock of the latter in exchange, pro rata, for its new shares. The Maryland Corporation agreed that as such exchanges were made, it would surrender to the New York Company its old shares of common stock, which formed its principal asset, in such amounts as were represented by the amounts of new common stock so issued.

These transactions were carried out and the former stockholders of the Maryland Corporation owned at least 80 per cent of the voting stock of the New York Company, which had no non-voting stock. The Maryland Corporation was dissolved in a court proceeding. It thus appears that a Maryland holding corporation, whose assets consisted largely of the common stock of a New York operating company, transferred miscellaneous assets having a book value of about $61,000 and this stock to the New York operating company. In return therefor the New York operating company assumed the holding corporation's debts and issued its new common stock and some bonds. This stock and these bonds were received by the stockholders of the Maryland holding corporation in return for their stock therein. The former stockholders of the Maryland Corporation came into control of the New York Company. Thereafter, the Maryland Corporation was dissolved.

The issue is whether this transaction constitutes as to the taxpayer a reorganization within the meaning of the term as used in the Revenue Act of 1928. The helpful provisions of that Act follow:

Sec. 112. Recognition of Gain or Loss.

(a) General rule.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) Exchanges solely in kind.—

(3) Stock for Stock on Reorganization.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of

the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

(c) Gain from exchanges not solely in kind.—(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property. 26 U.S.C.A. § 112 (a), (b) (3), (c).

(i) Definition of reorganization.—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation. 26 U.S.C.A. § 112 (g) note.

(j) Definition of control.—As used in this section the term "control" means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation. 26 U. S.C.A. § 112 (h).

It is unnecessary to decide whether the transaction heretofore described is a reorganization within the meaning of Sec. 112 (i) (1) (A), as constituting a merger or consolidation (including the acquisition

by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation or substantially all the properties of another corporation).

It is noteworthy that the Maryland Corporation transferred stock and miscellaneous assets to the New York Company. The stock transferred was the transferror's stock in the transferee. Dealing with this aspect of the same transaction, the Circuit Court of Appeals for the Second Circuit in Helvering v. Schoellkopf, Jr., 100 F.2d 415, recently decided, said that the shares of a company, when transferred to itself, cannot properly be regarded as property acquired, that the shares are merely extinguished, and added: "but even though this were not so and the shares could be regarded as property acquired by the New York Company, that company was under contract to return them and did not acquire them." The second circuit, as did the ninth circuit, in Commissioner v. Kolb, 100 F.2d 920, concluded that subdivision (A) did not cover the transaction. See Helvering v. Leary, 4 Cir., 93 F.2d 826, Contra.

■■ We pass this question by, because we think the Board's decision right upon the ground that the transaction comes within subdivision (B) providing that the term reorganization means a transfer by a corporation of all or *a part* of its assets if immediately after the transfer, the transferor or its stockholders or both are in control of the corporation to which the assets are transferred. As before stated, the Maryland Corporation transferred to the New York Company not only stock, but also miscellaneous assets having a book value of about $61,000 and subdivision (B) applies to a transfer by a corporation of a part of its assets. Neither such transfer nor the rest of the transaction appears to have been made for other than business reasons. Immediately after the transfer, the former stockholders of the Maryland Corporation had at least an eighty· percent control of the New York Company. Theirs was a substantial continuing interest. The transaction cannot be regarded, as the Commissioner contends, a mere liquidation of the Maryland Corporation or taxable as such. As stated in Helvering v. Schoellkopf, supra, the "liquidation of one of the companies, a party to a reorganization does not prevent the reorganization from being

644

within the statute: Sec. 115 (c) [26 U.S.C. A. § 115(c)] implies as much and the courts have so decided." All the elements of a statutory reorganization·inhered in the transaction. This has been so decided by the fourth, ninth, and second circuits. Helvering v. Leary, 4 Cir., 93 F.2d 826; Helvering v. Kolb, supra; Helvering v. Schoellkopf, supra.

█ The stock and debentures received by the taxpayer in pursuance of the plan of reorganization involve no tax liability, the $750 received represented an ordinary dividend of fifty cents a share by the New York Company and there is no·deficiency in the respondent's income tax for the year 1931.

The order or decision of the Board of Tax Appeals is affirmed.