### COMMISSIONER OF INTERNAL REVENUE v. FOOD INDUSTRIES, Inc.
### No. 6791.

Circuit Court of Appeals, Third Circuit.
Feb. 9, 1939.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for petitioner.

Thomas M. Wilkins, of Washington, D. C., for respondent.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

BIGGS, Circuit Judge.

This proceeding comes before us upon the petition of the Commissioner of Internal Revenue to review a decision of the United States Board of Tax Appeals finding no deficiency in income tax paid by the respondent for the calendar year 1931. Petitioner seeks to assess additional tax in the sum of $30,787.50. Briefly the facts are as follows.

At the beginning of the year 1931, General Baking Company, a New York corporation, operated a number of baking plants in various parts of the United States. The company had outstanding 90,775 shares of preferred stock and 429,719 shares of the common stock. Both classes of stock possessed equal voting rights.

General Baking Corporation, a corporation of the State of Maryland, was formed for the purpose of acquiring and holding the stock of the New York Company. Of the 429,719 shares outstanding of the common stock of the New York Company, the Maryland Corporation in January, 1931, held 429,406 shares. The Maryland Corporation did not own any of the preferred stock of the New York Company.

In January, 1931, the officers and directors of both companies decided that there was no longer any sufficient reason for the continued existence of the Maryland Corporation, and thereupon, upon the passage of appropriate resolutions by the directors and stockholders of the two companies and the making of contracts to such end, the Maryland Corporation transferred to the New York Company miscellaneous assets, having a total book value of $61,580.18, and the shares of common stock of the New York Company held by it. Pursuant also to the joint plan of the two companies, the New York Company then proceeded to issue to the Maryland Corporation its new common stock, debentures and cash, to the end that the Maryland Corporation might distribute these to its stockholders.

The respondent, which had possessed 50,-000 shares of the preferred stock of the Maryland Corporation, received 75,000 shares of the new common stock of the New York Company, debentures of the New York Company having a face value of $150,-000 with interest on such debentures in cash in the sum of $2,062.50 and cash in the sum of $37,500 as a dividend at the rate of 50¢ per share upon the new common stock of the New York Company. The other stockholders of the Maryland Corporation also surrendered their stock in the Maryland Corporation and received their aliquot portions of the new common stock of the New York Company, its debentures and cash at about the same time. The Maryland Corporation, as was contemplated in the joint plan of the two companies, was then dissolved in accordance with the laws of Maryland.

We should state that the New York Company in order to effect the plan increased the number of shares of its common stock and changed the classification of these shares from no par value to $5 par value common stock. The $5 par value common

stock is the "new" stock of the New York Company referred to. The increase in number of shares and change in par value were made for the purpose of effecting the exchange of the stocks of the two companies in accordance with the plan and possess no other significance.

Two questions are presented by the appeal at bar. The first is whether or not the surrender of the stock of the Maryland Corporation held by the respondent and the receipt by the respondent of the stock and securities of the New York Company was in law a non-taxable exchange made pursuant to a plan of reorganization between the two companies or a taxable distribution in liquidation of the Maryland Corporation. The second question presented is whether or not the dividend of 50¢ per share received by the respondent on its new stock of the New York Company is taxable as an ordinary dividend or as a liquidating dividend.

The petitioner contends that the transaction here involved was not a reorganization within the meaning of Section 112 of the Revenue Act of 1928, Act of May 29, 1928, c. 852, 45 Stat. 791, 816, 26 U.S.C.A. § 112, but was a mere liquidation of the Maryland Corporation and a gain upon the common stock and debentures of the New York Company received by the respondent upon the surrender of its stock in the Maryland Corporation. The petitioner further argues that as such it is taxable in accordance with the provisions of Section 115 of the 1928 Act, 26 U.S.C.A. § 115.

Subsection (b) (3) of Section 112 provided that upon the sale or exchange of property the entire amount of the gain or loss determined as provided under Section 111, 26 U.S.C.A. § 111, should be recognized, except that "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

It is obvious that in the case at bar the stock of the Maryland Corporation was exchanged "solely for stock or securities" in the New York Company. The question presented for our determination is whether or not this exchange took place in pursuance of a plan of reorganization. Subsection (i) of Section 112 provided that as used in Sections 112, 113 and 115 " * * * the term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, * * * (D) a mere change in identity, form, or place of organization, however effected."

■ In our opinion there was no formal merger or consolidation in the sense that these words are ordinarily used. Nor can the respondent avail itself of the clause in parentheses quoted above since it is apparent that the New York Company did not acquire "all of the properties" of the Maryland Corporation. The New York Company did acquire the miscellaneous assets heretofore referred to of the value of $61,-580.18, and received them with an indefeasible title, but the stock of the New York Company held by the Maryland Corporation was acquired by the New York Company only to the end that it might be reissued, though in a new form, to the Maryland Corporation. In our opinion this type of momentary acquisition is not the kind of acquisition referred to in the statute.

■ However, in accordance with the definition of reorganization supplied by the statute, the term "reorganization" includes a transfer by a corporation of a part of its assets to another corporation provided that immediately after the transfer the stockholders of the transferor are in control of the corporation to which the assets were transferred. It is apparent from an inspection of the record in the pending cause that the requirements of this definition are fulfilled literally by the transactions at bar. It follows therefore that if the statute be literally applied the respondent may avail itself of the exception supplied by subsection (b) (3) of Section 112 and that no gain or loss may be recognized upon the stock and debentures of the New York Company in its hands.

The petitioner points out, however, that the value of the miscellaneous assets of the Maryland Corporation acquired by the New York Company represented less than one-tenth of one percent of the total value of the assets of the Maryland Corporation, the stock of the New York Company held by the Maryland Corporation possessing a

book value of $96,625,395.54. The petitioner argues that the value of the miscellaneous assets transferred was so small and unimportant that in fact the sum of all the transactions was nothing more than the surrender of the stock of the Maryland Corporation by its stockholders and receipt by them of the assets of the Maryland Corporation in liquidation. The petitioner contends that the various transactions between the companies pursuant to their plan must be viewed essentially as a single transaction leading to the liquidation of the Maryland Corporation and the steps taken to that end will not be treated separately. In other words, the petitioner contends that the substance and not the form of the transaction controls, citing Bassick v. Commissioner, 2 Cir., 85 F.2d 8, 10, certiorari denied, 299 U.S. 592, 57 S.Ct. 120, 81 L.Ed. 436, and the cases cited therein, and that in substance the transactions resulted in liquidation of the Maryland Corporation, not in the reorganization of the two companies.

In support of his position the petitioner cites the decision of the Supreme Court in Minnesota Tea Company v. Helvering, 302 U.S. 609, 58 S.Ct. 393, 395, 82 L.Ed. 474. In this case the taxpayer, a corporation, distributed its assets to its stockholders upon liquidation. Included in the assets so distributed was the sum of $106,471.73, the amount of the remaining debts of the corporation which the stockholders contracted to pay upon its dissolution. The question presented to the Supreme Court for its adjudication was whether or not this sum was taxable to the corporation or whether or not it had been distributed to the stockholders within the meaning of Section 112(d) (1) and (2) of the Revenue Act of 1928, 26 U.S.C.A. § 112(d) (1) and (2), as part of a plan of reorganization. The Supreme Court held that the sum was taxable to the corporation, stating: "The conclusion is inescapable * * * that by this roundabout process petitioner received the same benefit 'as though it had retained that amount from distribution and applied it to the payment of such indebtedness.' Payment of indebtedness, and not distribution of dividends, was, from the beginning, the aim of the understanding with the stockholders and was the end accomplished by carrying that understanding into effect. A given result at the end of a straight path is not made a different result because reached by following a devious path. The preliminary distribution to the stockholders was a meaningless and unnecessary incident in the transmission of the fund to the creditors, all along intended to come to their hands, so transparently artificial that further discussion would be a needless waste of time. The relation of the stockholders to the matter was that of a mere conduit. The controlling principle will be found in Gregory v. Helvering, 293 U.S. 465, 469, 470, 55 S.Ct. 266, 267, 79 L.Ed. 596, 97 A.L.R. 1355; * * *".

Though the transactions between the two companies are literally within the provisions of Section 112(i) (1) (B) we would not feel bound to hold that the surrender of the stock held by the respondent in the Maryland Corporation and the receipt by it of the stock and debentures of the New York Company was a non-taxable exchange if the net result to the respondent was that which would have come to pass had the Maryland Corporation been dissolved with the consent of its stockholders in the ordinary way and without entering into any transactions or agreements with the New York Company. In such a case the alleged reorganization might be a mere cloak for dissolution. Minnesota Tea Company v. Helvering, supra.

Examining the case at bar in the light of the circumstances, however, we see that holders of the preferred stock of the Maryland Corporation, of which the respondent was one, each received for every 100 shares of the Maryland Corporation held by them, 150 shares of the new common stock of the New York Company and "for all dividends * * * accrued and unpaid, * * * 5-½% Sinking Fund Debentures (of the New York Company) * * *, with interest thereon adjusted and accruing from January 1, 1931 * * *, at the rate of $300 principal amount thereof on each 100 shares of stock." This result to the stockholders of the Maryland Corporation is a very different one than that which would have eventuated had the stock of the New York Company held by the Maryland Corporation been distributed on liquidation for the reason that the stockholders of the Maryland Corporation received other and further rights than those which would have come to them upon the dissolution of their corporation. These rights were created and came to the stockholders of the Maryland Corporation because of the consummation of the joint plan of the two companies whereby the obligations of the Maryland Corporation were assumed by the New York Company and the Maryland Corporation was done away with.

We think therefore that a "reorganization" of the two companies did in fact take place not only within the literal language of the statute but also within its spirit.

■ It follows that the dividend paid by the New York Company upon its new shares was an ordinary dividend and not a liquidating dividend.

The identical questions presented for our decision by the case at bar were adjudicated in favor of the taxpayer by the Circuit Court of Appeals for the Fourth Circuit in Helvering v. Leary, 93 F.2d 826, by the Circuit Court of Appeals for the Second Circuit in Helvering v. Schoellkopf, Jr., 100 F.2d 415, by the Circuit Court of Appeals for the First Circuit in Commissioner v. Whitaker, 101 F.2d 640, and by the Circuit Court of Appeals for the Ninth Circuit in Commissioner v. Kolb, 100 F.2d 920. In reaching the conclusions expressed in this opinion we have followed in part the reasoning of the decisions cited.

The decision of the Board of Tax Appeals is affirmed.

DAVIS, Circuit Judge, dissenting.