COMMISSIONER OF INTERNAL REVENUE v. WEBSTER'S ESTATE, et al.

No. 10264.

Circuit Court of Appeals, Fifth Circuit.

Nov. 13, 1942.

McCORD, Circuit Judge, dissenting.

———◆———

Bernard Chertcoff, Sewall Key, and Gerald L. Wallace, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., for petitioner.

Edwin B. Ellis, of St. Petersburg, Fla., and Andrew B. Young, of Philadelphia, Pa., for respondents.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

HOLMES, Circuit Judge.

The question presented by this petition for review is whether the method by which the stockholders of Webster Finance and Investment Company, a holding company, effected an exchange of their stock for stock in Warren Webster and Company, the operating company, was a tax-free reorganization within the provisions of Section 112(b) (3) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 692, or whether it was a liquidation within the purview of Section 115(c) of the Act, 26 U.S.C.A. Int.Rev.Acts, page 703.

In 1927 Warren Webster owned 4200 of the 6000 shares of stock issued by the operating company. He wished to relinquish a substantial amount of his stock and yet retain a controlling interest in the company, so he organized the holding company and transferred to it 3001 shares of his stock in exchange for all the capital stock of the holding company, 5000 shares of class A voting and 5000 shares of class B non-voting. In 1935 it was considered advantageous to eliminate the holding company, and the legal nature of the proceedings undertaken to consummate that purpose is the decisive question here.

The plan was executed in this way: The directors of both corporations adopted a written "Agreement of Merger and Consolidation", providing that the holding company was thereby merged into and consolidated with the operating company, said merged corporation to have all the rights, privileges, powers, and franchises previously possessed by both corporations, and to be vested with all the property and liable for all the debts of each of the corporations, except such property of the holding company, exclusive of its capital stock in the operating company, as it might distribute as dividends to its stockholders prior to the filing of the agreement. It was also provided that the stockholders of the holding company should surrender their stock to the merged corporation for cancellation, and should receive therefor the stock of the operating company that had been transferred to it by the holding company. The agreement was drafted and executed in strict com-

pliance with the statutes of New Jersey providing for corporate mergers.[1]

Section 112(b) (3) of the Revenue Act of 1934 provides that no gain or loss shall be recognized if stock in a corporation a party to a reorganization is, in pursuance of the plan of reorganization, exchanged solely for stock in such corporation or in another corporation a party to the reorganization. Section 112 (g) (1) (A) provides that the term reorganization means a statutory merger or consolidation. The taxpayers contend that the transaction described was a statutory merger such as brought it within the coverage of Section 112 (b) (3), supra. The Commissioner contends that there was no merger, since no property was transferred to the operating company and the economic position of the operating company remained unchanged after the transfer, and that, even if there was a merger, the transaction was none the less taxable, because the merger served no business purpose and accomplished the same result as would have been achieved by a liquidation.

These same contentions upon these identical facts were before the Circuit Court of Appeals for the Third Circuit in Commissioner v. Gilmore et al., and that court, in an able opinion by Judge Goodrich rendered August 28, 1942, 130 F.2d 791, affirmed the decision of the Board of Tax Appeals holding the transaction in question to have been a tax-free reorganization. We agree with the conclusion reached, and deem it unnecessary to add much to what was said in that case.

The essence of the position assumed by the Commissioner is that a pure holding company cannot merge with its operating company within either the letter or the spirit of the reorganization statute. We take up first the question of literal compliance. The holding company, irrespective of the nature of its assets, was entitled to recognition as a legal entity separate and distinct from the operating company. The capital stock of the operating company was property in the hands of the holding company over which it exercised complete dominion and control. Pursuant to an agreement entered into by the directors of each of the corporations, and by means of a series of transactions that unquestionably would have resulted in a merger if the assets of the holding company had been in any other form, the property of the holding company passed to the operating company. Thereupon, in accordance with the regular practice in the case of mergers, the stock of the continuing corporation was exchanged for the stock of the extinguished company, and the latter stock was cancelled. If the assets of the holding company had been in any other form, the operating company would have been obliged to issue its capital stock of an equivalent value to the shareholders of the holding company, in the stock for stock exchange. Irrespective of the nature of the property transferred to it, therefore, the immediate economic position of the operating company would have remained unchanged, since its liabilities would have been increased proportionately to the increase in its assets. It is doubtful if the legal significance of the transaction was altered by the mere fact that the property received by the operating company as a result of the merger passed in unchanged, rather than changed, form to the stockholders of the holding company.[2]

Moreover, we are not convinced that the receipt by a corporation of its own stock, under the circumstances here obtaining, does not constitute a receipt of property.[3] It is true that in certain circumstances, for tax purposes, the receipt by a corporation of its own stock is not regarded as an acquisition of property, because there is no realization of income.[4] On the other hand, if such stock is received gratuitously from a subsidiary, it is treated as a taxable dividend.[5] It has market value either upon reissue or upon retirement, resulting in a reduction of liabilities in the latter instance, and a corporation may trade in its own stock as well as in the stock of other corporations. Be that as it may, the State of New Jersey has provided statutory machinery for corporate mergers with which these corporations precisely complied, and

[1] N.J.S.A. 14:12–1 et seq.

[2] Helvering v. Leary, 4 Cir., 93 F.2d 826. Cf. Cortland Specialty Co. v. Commissioner, 2 Cir., 60 F.2d 937.

[3] Helvering v. Leary, 4 Cir., 93 F.2d 826; Commissioner v. Kolb, 9 Cir., 100 F.2d 920; Golden State Theatre &

Realty Corp. v. Commissioner, 9 Cir., 125 F.2d 641. Contra, Helvering v. Schoellkopf, 2 Cir., 100 F.2d 415.

[4] Squibb & Sons v. Helvering, 2 Cir., 98 F.2d 69.

[5] Golden State Theatre & Realty Corp. v. Commissioner, 9 Cir., 125 F.2d 641.

no law of that state prevents the merging of a holding company with its operating company. Presumably, two corporations that have rigidly followed a procedure prescribed for mergers, intending to merge, become merged, at least within the statutory concept. Article 112(g)–2 of Treasury Regulations 86 of 1934, as amended in 1935, provided that the words "statutory merger or consolidation" referred to a merger or a consolidation effected in pursuance of the corporation laws of a state.

The principle under which statutory reorganizations are not considered taxable events is that no substantial change has been effected either in the nature or the substance of the taxpayer's capital position, and no capital gain or loss actually has been realized. Such a reorganization contemplates a continuity of the business enterprise and a continuity of interest and control accomplished by an exchange of stock for stock.[6] The precise purpose of the reorganization statute was thus satisfied here, for the merger merely effected a conversion of the indirect ownership of stock in the operating company into direct ownership, through a readjustment of corporate structures so as to maintain a continuity of the business enterprise and a continuity of interest and control therein.

The transaction here involved was not a pure subterfuge designed at tax avoidance like that condemned in Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. Here the method undertaken was a plain statutory procedure available to the corporations by reason of their legitimate business status, not by virtue of any situation in which they had deliberately placed themselves, and the record clearly shows that several business considerations prompted the selection of the merger as the means by which to accomplish their intended result. That tax avoidance was one of the considerations is of no importance.[7]

The decision of the Board of Tax Appeals is affirmed.

McCORD, Circuit Judge (dissenting).

I do not agree that the method resorted to by the respondent to achieve liquidation of the holding company was a tax free merger or reorganization within the meaning of Section 112(b) (3) of the Revenue Act of 1934, c. 277, 48 Stat. 680. For the reasons stated in the dissent to the majority opinion of the Board, Gilmore v. Commissioner of Internal Revenue, 44 B.T.A. 881, I respectfully dissent to affirmance of the Board's decision.

---

[6] Helvering v. Schoellkopf, 2 Cir., 100 F.2d 415; Art. 112 (g)-1 of Treasury Regulations 86.

