EDGAR M. DOCHERTY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRANK R. BUDLONG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN A. STRAIGHT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE A. ARMSTRONG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 109238, 109239, 109240, 109241. Promulgated August 5, 1942.

*Stuart H. Tucker, Esq.*, for the petitioners.
*Martin H. Lore, Esq.*, for the respondent.

#### OPINION.

STERNHAGEN: The Commissioner determined the following deficiencies in income tax for 1939:

| | |
|---|---|
| Edgar M. Docherty | $3, 680. 49 |
| Frank R. Budlong | 3, 649. 64 |
| John A. Straight | 226. 24 |
| George A. Armstrong | 2, 985. 88 |

Petitioners contend that the receipt by them of debenture bonds was in pursuance of a plan of reorganization and was not a taxable dividend. The salient facts are all stipulated, and some testimony was taken; but there is no conflict in the evidence.

Petitioners are individuals residing in Rhode Island, and filed their income tax returns for 1939 in Providence. Since 1928 they have been the sole shareholders of the William C. Green Co.. a manufacturer of gold jewelry. It was organized in 1917 with an authorized capital stock of 500 common shares of $100 par value, and issued 499 shares. In 1939 Edgar M. Docherty, its treasurer, owned 167 shares; Frank R. Budlong, its president, 167 shares; John A. Straight, a former director, 20 shares; and George A. Armstrong, its secretary, 145 shares. Docherty, Budlong, and Armstrong were directors.

For many years the corporation has carried a $50,000 insurance policy on the life of each of the three officers, with the intention of retiring the stock of any one who should die and also to aid its credit. During 1939 the value of its stock was $600 a share and, while dividends of $10 to $30 a share have been regularly declared since 1935, its accumulated earnings and profits exceeded $49,900. On June 10, 1939, a plan of recapitalization was adopted to change the authorized capital stock to 500 common shares of no par value and issue $75,000 debenture certificates of $100 face value. These certificates bore 5 percent interest, payable quarterly, and were to mature on February 25, 1959, or sooner at the corporation's option; they were subordinated to claims of all other creditors.

In pursuance of this plan, petitioners surrendered their stock certificates to the corporation and received in exchange for each share one share of the no par value stock and a $100 debenture, worth par. The corporation's capital stock account was written down from $49,900 to $998. The $48,902 remaining in capital account and $998 from surplus account were transferred to the debenture account. Thereafter one share of stock was sold for cash, and "debenture certificates were issued in satisfaction of notes of the corporation which were held by the officers." At the close of the corporation's taxable year ended February 28, 1940, there were outstanding all of the corporation's shares, the $49,900 face value debentures issued for the surrendered old shares, and $23,500 face value debentures "issued in satisfaction of notes of the corporation which were held by the officers." Petitioners still hold the debentures, except that Docherty made a gift to his family of $4,000 issued to him in satisfaction of notes.

On June 10, 1939, petitioners deposited their stock certificates and the corporation deposited the insurance policies on its officers' lives in trust with a national bank of Providence as trustee to collect the proceeds upon an insured's death and purchase his shares and also

Straight's shares. The plan to recapitalize and issue debentures was adopted to facilitate this arrangement, and was intended to avoid the possibility of unfriendly shareholders and of litigation.

Debenture bonds were issued to petitioners for their old shares as follows: Docherty $16,700, Budlong $16,700, Straight $2,000, Armstrong $14,500. The Commissioner included these amounts in their respective incomes as an ordinary taxable dividend.

However uncertain may be the boundaries of the term "recapitalization" as used in the definition of reorganization, section 112 (g), we think it must be read to comprise a reduction or other change in the par value of capital stock. The change here involved was a reduction from par value of $100 per share to no par and a stated value of $2 per share, thus changing the aggregate par value of $50,000 to a stated value of $1,000, and leaving the number of shares (500) unchanged. The purpose of this is explained as a means, in this small closely held corporation, of facilitating the purchase of the shares held by any of the four shareholders in the event of his death, and thus to assure the continuance of harmonious ownership and control. As a part of this plan of recapitalization, the shareholders exchanged their common shares, not alone for shares of no par value, but also for 30-year debentures. The recapitalization plan involved both the shares and the debentures and there is no ground for treating the debentures as if they were the subject of a separate and unrelated transaction. The debentures were "securities", and as to each petitioner the transaction was literally an exchange of his shares in the corporation, in pursuance of a plan of reorganization (recapitalization), for shares and securities in the corporation. This is precisely within the terms of section 112 (b) (3), which provides that in such transaction no gain or loss shall be recognized. This is what the petitioner claims, and we see no ground for denying it.

There is nothing to arouse the application of the doctrine of *Gregory* v. *Helvering*, 293 U. S. 465, for the recapitalization was a *bona fide* readjustment of the corporation's financial structure for a legitimate business purpose. The evidence to that effect is entirely credible and there is neither fact nor circumstance to throw it in doubt.

The Commissioner's determination is reversed.

*Decision will be entered under Rule 50.*