*246 opinion-.
Matthews :
The record clearly establishes, and it is not denied by the petitioner, that all of the steps set out in our findings were part, of one plan and purpose, to effect a stepped-up basis for the property sold and thus to avoid or at least to “ postpone ” the tax upon the profit from the sale of the assets belonging to Greason, Son & Dal-zell, Inc., on February 6,1930, which assets were used in the conduct of its business as coal dealer and which it agreed to sell to another corporation also engaged in the coal business.
Respondent does not question the organization of Handbird and Fidelis and Sentinel corporations. He recognizes that they were separate legal entities properly organized under the laws of the State of New York. Neither does he deny that these corporations took the formal steps contemplated by the agreement dated February 6,1930, between Greason, Son & Dalzell, Inc., and Pattison & Bowns, Inc. He does contend, however, that Sentinel never purchased any of the stock of petitioner nor any of its bonds, and that, stripped of all unessential details, Sentinel purchased the assets of Handbird for $315,000 in cash. It is the respondent’s position that the basis of these assets in the hands of Handbird is the same as that in the hands of the transferor, namely, $117,715.72.
Petitioner contends (1) that the transaction between Greason, Son & Dalzell, Inc., and Fidelis was a reorganization within the meaning of section 112 (i) (1) (B) of the Revenue Act of 1928 and nontaxable because of the provisions of section 112 (b) (4); that both Greason, Son & Dalzell, Inc., and Fidelis were parties to a reorganization within the meaning of section 112 (i) (2) and that under section 113 (a) (7) the basis of the assets to Fidelis was the same as the basis of the same assets in the hands of Greason, Son & Dalzell, Inc.; (2) that the transaction by which Fidelis transferred the assets it had received from Greason, Son & Dalzell, Inc., *247 to Handbird, the petitioner, was a statutory reorganization between Fidelis and Handbird within the meaning of section 112 (i) (1) (A) and a nontaxable transaction to Fidelis; (3) that the assets acquired by Handbird from Fidelis for $315,000 had a valuation in the hands of Handbird of $315,000, irrespective of cost or basis to either Fidelis or Greason, Son & Dalzell, Inc., for the reason that although the exchange between Fidelis and Handbird was such an exchange as is described in section 112 (b) to (e), inclusive, and ordinarily the property in Handbird’s hands would take the same basis as it had in the hands of the person from whom received, the last sentence of section 113 (a) (6) specifically excludes such transaction; that section 113 (a) (7) does not apply because the interest of Fidelis in the property was less than 80 percent at the time of the transaction, since Fidelis acquired only 66% percent interest in the stock of Handbird, and only 62 percent of the bonds of Handbird; and that by the plain terms of these sections, therefor, “ the reorganization between Handbird and Fidelis and the transfer of property for stock and securities are within the very exceptions named in these sections, and it is equally clear that the value of these assets in the hands of Handbird was $315,000, the amount that it paid for the assets and property and the amount which the directors of Fidelis had adjudged them to be worth.” Counsel for petitioner argues that legal avoidance or postponement of taxation is entirely proper and it is insisted that the petitioner comes within the “ protection ” of those sections of the statute relating to reorganizations and nonrecognition of gain or loss, and that petitioner is entitled to the stepped-up basis. It is pointed out that “in the corporate proceedings every I was dotted and every T was crossed.”
The contention of petitioner is not sustainable. Under the principle announced by the Supreme Court of the United States in Gregory v. Helvering, 293 U. S. 465, the transfer of the assets of Greason, Son & Dalzell, Inc., to Fidelis for all the stock of Fidelis, and the transfer of the same assets by Fidelis to Hand-bird for stock and bonds of Handbird, under the circumstances outlined above, (Were not reorganizations within the meaning of the» statute even though they may come within the letter of the. statute/ But the transfer of the assets by Greason, Son & Dalzell, Inc., to Fidelis for all the stock of Fidelis was a nontaxable transaction under section 112 (b) (5) and we are of the opinion that the transfer of assets by Fidelis to Handbird for stock and bonds of Handbird is also a nontaxable transaction falling under section 112 (b)(5). This being the case, under section 113 (a) (8) the basis of the property in the hands of Fidelis is the same as the basis in the hands of Greason, Son & Dalzell, Inc., and the basis to Handbird is the same as the basis to Fidelis.
*248 The applicable sections of the statute follow:
SEO. 112. RECOGNITION OE GAIN OR LOSS.
(b) (5) Transfer to corporation controlled by transferor. — No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such' corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.
* $ * $ * $ *
(j) Definition of control. — As used in this section the term “ control ” means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.
SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.
* at * * * * *
(a) (8) Same — Corporation controlled by tkansferor. — If the property was acquired after December SI, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) * * * then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.
# # * * * *
In the light of the whole agreement between Greason, Son & Dalzell, Inc., and Pattison & Bowns, Inc., and the admitted purpose of the incorporation of Fidelis and Handbird, it is clear that the payment to Handbird of $191,000 by Sentinel on March 28, 1930, was in reality a part of the purchase price which Pattison & Bowns, Inc., had agreed to pay for the assets of Greason, Son & Dalzell, Inc., and that stock and bonds of the face amount of $191,000 were issued to Sentinel, to be held until the assets to be purchased could be transferred to Sentinel, merely as an accommodation to Greason, Son & Dalzell, Inc., in its scheme to handle the sale so that the property would have a stepped-up basis in the hands of Handbird. Handbird was created solely for the benefit of Greason, Son & Dalzell, Inc., and was the legal entity designated to transfer the assets to Sentinel and to receive the $315,000 cash from Sentinel. Under the circumstances here present Sentinel never was the real owner of any stock of Handbird and was the record owner only from March 28, when Handbird received the $191,000 cash, until the transfer to Sentinel on March 31 of the assets acquired from Fidelis, upon the. payment by Sentinel of the balance of the purchase price, $124,000, and the return of the stock and bonds. Pattison & Bowns, Inc., never intended for Sentinel to become a real owner of stock or debentures of Handbird. The stock was issued to Sentinel only a few hours before the assets were acquired from Fidelis and the balance of the *249 stock issued to Fidelis. In view of these circumstances, to hold that, because 100 shares of Handbird’s stock were in the name of Sentinel at the time it acquired the assets from Fidelis for the balance of its stock and so-called debentures, Fidelis did not have control of Hand-bird would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose. Cf. Hazeltine Corporation, 32 B. T. A. 4; West Texas Refining & Development Co. v. Commissioner, 68 Fed. (2d) 77. Viewing the transaction as a whole, Fidelis was in control of Handbird immediately after the exchange, which brings the transaction squarely within section 112 (b) (5), and under section 113 (a) (8) the basis of the property in the hands of Handbird is the same as it had in the hands of Fidelis.
The organization of the petitioner corporation, and its dissolution within the taxable year after it had served the purpose for which it was incorporated, was a part of the preconceived plan which is clearly set forth in our findings of fact and which had as its sole object not the reorganization of any business, but the sale and transfer of certain assets for a specified price. The basis of these assets in the hands of Greason, Son & Dalzell, Inc., was $117,715.72, which was also the basis thereof in the hands of Fidelis and of Handbird, and the sale price to Sentinel was $315,000.. We hold, therefore, that the difference between the two figures, or $197,284.28, represents the gain realized by the petitioner in the taxable year. The respondent, in determining the deficiency, computed the profit in this way and we approve his action. Cf. Royal Marcher, 32 B. T. A. 76; Helvering v. General Utilities & Operating Co., 74 Fed. (2d) 972.
Reviewed by the Board.

Judgment will ~be entered for the respondent.