W. F. Kennemer, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

M. D. Kennemer, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Service Ice Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

H. C. Kennemer, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 67675, 67676, 67677, 67682.   Promulgated February 8, 1937.

*W. H. Flippen, Esq.*, *W. B. Harrell, Esq.*, and *C. E. Kennemer, Esq.*, for the petitioners.

*Byron M. Coon, Esq.*, and *W. G. Cullen, Esq.*, for the respondent.

OPINION.

LEECH: The first question is whether the Kennemer brothers received dividends in liquidation within the meaning of section 115 (c) of the Revenue Act of 1928.

"Liquidation is a question of fact." *John Milton*, 33 B. T. A. 4, 8; *C. M. Menzies, Inc.*, 34 B. T. A. 163, 168. The adoption or failure to adopt a resolution of dissolution or liquidation is not controlling or determinative, nor the fact that the company was not formally dissolved but was later revived after forfeiture of its charter for failure to pay the franchise tax. *Ward M. Canaday, Inc.*, 29 B. T. A. 355, 361; affirmed in *Ward M. Canaday, Inc.* v. *Commissioner*, 76 Fed. (2d) 278; certiorari denied, 296 U. S. 612. That the brothers continued to hold the stock of Angelo Ice Co. after the questioned receipt of its assets by petitioners does not contradict the fact of liquidation. *Frelmort Realty Corporation*, 29 B. T. A. 181, 189. In *W. E. Guild*, 19 B. T. A. 1186, 1204, the Board stated:

> We can not presume liquidation to be in process merely because a resolution of the stockholders authorized the directors to take such action. Liquidation is not a technical status which can be assumed or discarded at will by a corporation by the adoption of a resolution by its stockholders, but an existing condition brought about by affirmative action, the normal and necessary result of which is the winding up of the corporate business.

In that proceeding the Board defined "liquidation" when applied to a company "as the operation of winding up of its affairs by realizing its assets, paying its debts and appropriating the amount of profit and loss."

It may be that the original intention was that the Angelo Ice Co. should sell its assets, change its name, and buy other properties.

There are many things in the record that indicate this intention. However, if that were so that intention was obviously abandoned. The corporation did not, in fact, do that. The fact controls the tax incidence here. *Weiss* v. *Wiener*, 279 U. S. 333; *Gregory* v. *Helvering*, 293 U. S. 465; *C. M. Menzies, Inc.*, 34 B. T. A. 163, 168.

There is no showing that the Angelo Ice Co. continued, after the sale of its ice plant in San Angelo, to operate as a corporation or that it transacted any business except the payment of its debt. If it had been intended from the outset to continue that company in existence and if the Kennemer brothers held the proceeds of the sale and acquired the properties purchased in their own names for convenience and as trustees for the Angelo Ice Co., there was no necessity whatever for the organization of the Service Ice Co.

C. E. Kennemer, who negotiated the sale of the ice plant of the Angelo Ice Co. and the purchase of the three ice plants acquired with the proceeds from the sale of the San Angelo ice plant and whose advice and suggestions were followed throughout, testified in substance that, although the sale was made in November 1928, it was not closed until January 1929 because they wanted to close their business in an orderly way and they knew that if the public found out that they were getting out of business it would be hard for them to collect their accounts; that it was contemplated at all times to reinvest "all the money they had in the Angelo Ice Company into another company, after their debts had been paid"; that the American Service Co. bought the right to operate in the name of Angelo Ice Co.; that it was stipulated that his brothers could not operate in Tom Green County under the name of the Angelo Ice Co.; that because of that reason, "when they brought that money to Dallas, they changed it from the Angelo Ice Company to Kennemer Brothers until such time as they could secure a charter with which to carry on"; and that they used all the assets of the Angelo Ice Co. remaining "after they paid their indebtedness they owed at that time they sold out" for the organization of the Service Ice Co. A consideration of this testimony, together with the transfer of the amount of $240,000 of the proceeds of the sale of the San Angelo Ice plant to Kennemer Brothers, the use thereof by them for the purchase of ice plants in other localities in their individual names, the payment of the debts of the Angelo Ice Co., the organization of a new corporation, the transfer to it of the properties purchased together with the funds remaining of the $240,000 deposit and other assets of the Angelo Ice Co. remaining after the payment of its debts, and the abandonment of the business franchise of the Angelo Ice Co., leads irresistibly to the conclusion that a liquidation of the business and affairs of the Angelo Ice Co. was intended and carried out.

Petitioners argue that they are relieved from the tax here by the Revenue Act of 1928, section 112 (g).[1]

The validity and actuality of the organization and existence of the Service Ice Co. can not be doubted on this record. *International & G. N. Railway Co.* v. *Anderson County*, 150 S. W. 239.

To support petitioners' position, the contested distribution must have then been "in pursuance of" the plan of reorganization finally executed. *Edison Securities Corporation*, 29 B. T. A. 483; reversed, 78 Fed. (2d) 85, but not on this point; *J. M. Harrison, Inc.*, 30 B. T. A. 455.

Certainly, the transfer of the properties acquired and constructed with the $240,000 deposited in Kennemer Brothers' account in the Dallas bank and the conveyance of those properties by that company to the Angelo Ice Co. were indispensable links in the consummation of any statutory reorganization that actually did occur. Revenue Act of 1928, sec. 112 (i).[2] But a joint resolution of the officers and directors of both these companies, adopted on the 15th day of April 1930, immediately after the revival of the charter of the Angelo Ice Co., states that the transfer of these assets to the Service Ice Co. was unintentional and a mistake. Then the Service Ice Co. in its return for the period in dispute, denies that it ever, rightfully owned these properties or operated them and asserts that such assets and business were, in fact, those of the Angelo Ice Co. And, immediately upon the "correction of the mistake" the Service Ice Co. was dissolved. Obviously, this record conclusively contradicts the existence, at the time of the disputed distribution, of a plan for any such reorganization, statutory or otherwise, as may have been ultimately effected here.

The fact, decisive here, is that the Angelo Ice Co. was liquidated. It may be that a reorganization of some corporation followed. But

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\*        \*        \*        \*        \*        \*

(g) *Distribution of stock on reorganization.*—If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\*        \*        \*        \*        \*        \*

(i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

such reorganization, if it did occur, is not before us. The liquidation, upon which, alone, the pending deficiency arose, was complete before such reorganization as may have been effected after the liquidation, was planned.

The next question to be considered is whether the agreed deficiency of $6,327.99 constitutes the tax liability of the Service Ice Co. During the fiscal year ended February 28, 1930, the Angelo Ice Co. forfeited its right to do business. Its former assets had been transferred to a new corporation, the Service Ice Co. The Angelo Ice Co. was then without assets and business, and, so far as the record discloses, it transacted no business after January 14, 1929, excepting the payment of its indebtedness. On the other hand, the Kennemer brothers had received, on January 14, 1929, and thereafter held the greater part of the assets of that company in their individual names. As soon as the Service Ice Co. was incorporated, all the assets were transferred by them to the latter company. The Angelo Ice Co. was passive and without assets, while the Service Ice Co. owned and held all the assets and was the active, operating company. It was not until April 1930, after the expiration of the fiscal year here involved, that the Angelo Ice Co. was revived, and it was not until then that the Service Ice Co. was dissolved. We are not concerned with what was done after the close of the fiscal year ended February 28, 1930. The status of the companies during the fiscal year here involved is controlling. Since the assets and business were owned and operated by the Service Ice Co. during that fiscal year, it follows that the income therefrom is the income of the Service Ice Co. and that it, and not the revived Angelo Ice Co., is liable for the income taxes thereon.

*Decision will be entered for the respondent.*