### BURLEY TOBACCO WAREHOUSE, Inc. et al. v. GLENN, Collector of Internal Revenue.

### Civ. No. 1964.

United States District Court, W. D. Kentucky, at Louisville.

Jan. 17, 1952.

950

W. Howard Clay, Earl S. Wilson, Louisville, Ky., for plaintiffs.

Andrew D. Sharpe, Henry L. Spencer, Special Assts. to the Atty. Gen., David C. Walls, U. S. Atty., Charles F. Wood, Asst. U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

This action was brought by Burley Tobacco Warehouse, Inc., et al, to recover $14,835.75, with interest, paid as additional corporation income taxes and interest for the fiscal year ended April 30, 1946, on the ground that the assessment of the deficiency was erroneous.

The question presented is whether the gain of $55,840 from the sale of the tobacco warehouse owned by the taxpayer corporation is taxable to it, as determined by the Commissioner of Internal Revenue, or to the stockholders of the corporation, who claim the sale was made after a distribution in liquidation of the corporate assets to them.

The case was tried to the Court on May 14, 1951. Oral arguments were made at that time and briefs filed by Counsel.

The Court makes the following Findings of Fact and Conclusions of Law—

### Findings of Fact

1. The taxpayer, Burley Tobacco Warehouse, Inc. a Kentucky corporation, organized in 1938, filed its income tax return on May 15, 1946, for the period ending April 30, 1946, showing a net operating loss and no tax liability.

2. After an audit was made of the return filed, taxpayer corporation was notified of a proposed tax deficiency for the period in the amount of $13,960.08. After executing waiver, Form 874, consenting to the immediate assessment of the deficiency, the taxpayer, on December 18, 1947, paid the deficiency with interest.

3. The corporation's cost basis on the warehouse was $19,159.60. The Commissioner of Internal Revenue determined that the corporation had sold the warehouse and transferred its title to Worthington and Tripp and on September 23, 1946, made a deficiency tax assessment against it based on a capital gain of $55,840.31. The taxes thereon amounted to $13,960.08 and the interest thereon $871.65, making a total of $14,835.73, the amount which plaintiffs seek to recover in this action together with interest from December 18, 1947. On July 21, 1948, the taxpayer filed a claim for refund of the taxes and interest paid, which claim was duly disallowed by the Commissioner April 24, 1950.

4. From the date of its organization in 1938, the taxpayer was a corporation organized for the purpose of operating the tobacco warehouse and was at all times engaged in that business. The capital stock of the corporation was owned by four individuals as follows—

| | | |
|---|---|---|
| F. T. Cantrell, | Greensburg, Kentucky | 100 shares |
| P. L. Edwards, | Greensburg, Kentucky | 100 shares |
| Mrs. M. V. Edwards, | " " | |
| Mrs. M. R. Vance, | Louisville, Kentucky | 100 shares |

P. L. Edwards was president of the corporation, Mrs. M. R. Vance and Mr. F. T. Cantrell were vice presidents, and Mrs. M. V. Edwards was secretary-treasurer. All of the stockholders were also Directors of the corporation.

5. The principal asset of the corporation was a tobacco warehouse which was sold on October 27, 1945, to Messrs. Tripp and Worthington for $75,000 cash. It is the gain from the sale of this warehouse that is involved in this case. The minutes of the corporation, which were kept in a loose leaf notebook indicates that on February 24, 1945, the stockholders and directors of taxpayer corporation held a meeting for consideration of the propriety of dissolving the corporation before the next selling season in December. The minutes of this date also indicate that it was agreed that the money in the treasury be held in the treasury or loaned by the corporation to the stockholders. As a result of this action, the money, $18,000 was loaned to the stockholders, in amounts proportionate to the capital stock owned by each. Notes covering these loans were made by the stockholders to the corporation. No liquidating dividend to the stockholders of this cash in the treasury and no liquidating dividend of its other asset, the warehouse, in kind to the stockholders were considered or voted upon at any meeting of the stockholders or directors, prior to April 15, 1946.

6. The next action by the stockholders and directors, as shown by the corporate minutes book, was the annual meeting on June 4, 1945. At this meeting the stockholders elected the directors to serve until the corporation is dissolved. Immediately following this page are the minutes of the meeting of the directors and stockholders held on April 15, 1946, voting for the dissolution of the corporation and for the distribution of its assets.

7. Mr. Jasper L. Tripp and Mr. D. W. Worthington, residents of North Carolina, arrived in Greensburg, Kentucky, on September 28, 1945, seeking to construct or buy a tobacco warehouse. Negotiations were carried on by them with P. L. Edwards, president, and F. T. Cantrell, vice president, to purchase the tobacco warehouse owned by the corporation, Burley Tobacco Warehouse, Inc. On October 1, 1945, an agreement was reached and a written option of that date was executed by the terms of which Tripp and Worthington could purchase the warehouse within a period of 30 days at the purchase price of $75,000. Tripp and Worthington each gave his check payable to the corporation for $2,500 and could pay the balance of $70,000 within thirty days or forfeit the $5,000 paid. Each of the checks for $2,500 was indorsed by the corporation and was paid to the stockholders.

8. On October 26, 1945, the option was exercised by Tripp and Worthington and each paid by cash or check $35,000. Mr. Tripp testified that he paid $20,000 in cash and $15,000 by a check payable to Burley Tobacco Warehouse and that in writing the check his wife had before her the option and made the check payable to the same name that was signed as the giver of the option. Later, he lost his copy of the option. The name, Burley Tobacco Warehouse, was stricken by pen and above it was typed the names of each of the stockholders. Mr. Tripp testified that he had not authorized any one to change the check and that he did not know who had stricken the name of Burley Tobacco Warehouse on the check, but that he made no objection to the check being paid as changed. Mr. Worthington has not testified in the case. Mr. Cantrell, in the presence of Worthington and Tripp's brother, corrected the check so as to designate the proper payee, to-wit, F. T. Cantrell, P. L. Edwards, N. V. Edwards and M. R. Vance, the four stockholders. Mr. Cantrell said that he had this change made because he realized the check as drawn did not reflect the true transaction.

9. Mr. Tripp testified further that the written option was signed Burley Tobacco Warehouse by Mr. P. L. Edwards as president. He understood at all times that he was dealing with the corporation and was not dealing with the stockholders. Mr. Cantrell testified that on October 27, 1945, when the sale was closed and the warehouse was deeded to the purchasers, he had in his

possession two copies of the written option and that he tore them into pieces and threw them into the waste basket. Mr. Cantrell also testified that it was his opinion that the option was signed by two stockholders. Two other stockholders testified that their opinions were the same. No copy of the option is available as evidence in the case from which this conflict in testimony can be resolved.

10. Shortly after the resolution was passed, on February 24, 1945, to dissolve the corporation before the next selling season in December, a letter was addressed to the Secretary of State of Kentucky, in which advice was requested as to what action was necessary to dissolve the corporation and the Secretary of State replied by letter, inclosing a blank form to be filled out and executed and advising that a corporation in Kentucky must first pay all taxes due and obtain a clearance from the Commissioner of Revenue before it could be dissolved. This form was not executed and returned to the Secretary of State and no steps were taken to comply with the advice given by the Secretary of State until after the sale of the warehouse had been consummated. No proper action to accomplish liquidation or dissolution of the corporation prior to the sale of the warehouse was taken, except the passage of the resolution dated February 24, 1945, declaring an intention to dissolve the corporation before the selling season in December 1945.

The declared intention to dissolve and liquidate the corporation was carried out by further action taken by the stockholders and directors on April 15, 1946, nearly six months after the warehouse had been sold. No such further action was taken prior to the sale.

11. Each of the stockholders filed his or her individual income tax return for the year 1945 and did not include therein any income or profit from the sale of the warehouse. A month or so later, after a discussion of the matter was had with a local internal revenue agent, each filed amended return in which each included, as profit on corporate stock, the gain on the sale of the warehouse.

12. The negotiations for the sale of the tobacco warehouse to Tripp and Worthington was carried on, in the manner stated in Finding 7, above, when the title to the tobacco warehouse was in the plaintiff corporation and before any deed was made, conveying the tobacco warehouse to its stockholders.

13. No resolution was presented, considered or adopted at any meeting of the stockholders or directors, of the plaintiff corporation, specifically authorizing or directing that any deed or conveyance be made, conveying the tobacco warehouse to its stockholders or that any distribution of this asset in kind be made to them.

14. No resolution was presented, considered or adopted at any meeting of the stockholders or directors of the plaintiff corporation, prior to April 15, 1946, declaring the corporation to be in liquidation, and the evidence fails to show that any notice of any proposed liquidation of the corporation was or was not given to the United States Commissioner of Internal Revenue, pursuant to Section 148(d) of the Internal Revenue Code, 26 U.S.C.A. § 148(d).

15. No resolution was presented, considered, or adopted at any meeting of the stockholders or directors of plaintiff corporation authorizing or purporting to authorize Mr. Edwards, president, or Mr. Cantrell, vice president, or any other officer of the corporation or person to act as agent to sell the warehouse for the corporation or to negotiate on behalf of the corporation in any manner in respect to such sale.

16. No resolution was presented, considered, or adopted at any stockholders or directors meeting which authorized or purported to authorize the corporation or any agent thereof to sell the warehouse at any price.

Conclusions of Law

1. The applicable Statute and Treasury Regulations are as follows:—

"Internal Revenue Code:

"§ 22. Gross income

"(a) *General definition.* 'Gross income' includes gains, profits, and income derived

from \* \* \* sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; \* \* \*."

26 U.S.C.1946 ed., Sec. 22.

"Treasury Regulations 111, promulgated under the Internal Revenue Code:

"Sec. 29.22(a)–18. Sale of Capital Assets by Corporation—

If property is acquired and later sold for an amount in excess of the cost or other basis, the gain on the sale is income. If, then, a corporation sells its capital assets in whole or in part, it shall include in its gross income for the year in which the sale was made the gain from such sale, \* \* \*.

"Sec. 29.22(a)–20. *Gross income of corporation in liquidation.*— \* \* \* No gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation, \* \* \*."

2. This case is to be determined from the teaching of Commissioner of Internal Revenue v. Court Holding Company, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 and U. S. v. Cumberland Public Service Company, 338 U.S. 451, 70 S.Ct. 280, 282, 94 L.Ed. 251.

The task of the Trial Court is accentuated by the last paragraph of the Cumberland Public Service Company opinion that it is for the Trial Court to determine upon a consideration of the entire transaction, the factual category in which a particular transaction belongs; that is whether the physical property is distributed in kind to its stockholders and then sold by the stockholders or whether it is a sale by a corporation of its physical properties and a subsequent distribution of the cash proceeds as liquidating dividends.

That this determination may be difficult was recognized by the Supreme Court in the Cumberland Public Service case, a closely held corporation, where the Court said—"While the distinction between sales by a corporation as compared with distribution in kind followed by shareholder sales may be particularly shadowy and artificial when the corporation is closely held, Congress has chosen to recognize such a distinction for tax purposes. The corporate tax is thus aimed primarily at the profits of a going concern."

The Supreme Court observed that the Statute and Regulations promulgated thereunder inherently will evolve "oddities in tax consequences", because whether the assets are transferred as liquidating dividends or whether the property is distributed in kind and then sold by the shareholders, in both instances the interest of the shareholders in the business has been transferred to the purchaser.

In the first instance, the corporation is taxed; in the latter, the corporation is not taxed.

The Supreme Court, in taking the Cumberland Public Service Company case on certiorari, did so "to clear up doubts arising out of the Court Holding Co. case". 338 U.S. at page 453, 70 S.Ct. at page 281.

It is suggested in brief of Counsel for taxpayers that the Court Holding case was grossly misunderstood and was interpreted as meaning that if either stockholders or officers of the corporation had negotiated with reference to the sale of the corporate assets before there was an actual distribution in kind of the properties to the stockholders, that the sale would be treated as a sale by the corporation.

It is not necessary in a contract of sale by stockholders that they, by prior action, should have dissolved or agreed to a dissolution or to the resolution pertaining to dissolution. Howell Turpentine Company v. Commissioner, 5 Cir., 162 F.2d 319, 323. The mode of dealing, if lawfully employed, though knowingly used, to save taxes, is no argument against the lawfulness of the action. "The legal right of a taxpayer to decrease the amount of what would otherwise be his taxes, or altogether to avoid them, by means which the law permits, cannot be doubted." Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596.

In this case, a resolution was adopted in February declaring that the corporation would be dissolved prior to the buying season (December thereafter.) When the directors and officers were elected in June

954

thereafter, they were elected to serve until the dissolution. Promptly after the contract was made for the sale of the warehouse, a deed was executed conveying the property from the corporation to the stockholders and thereafter the stockholders conveyed the property to the purchasers. Care was exercised to distribute the proceeds of this sale directly to the stockholders and none of it passed through the channels of the corporation.

In the case of Doyle Hosiery Corporation v. Commissioner, 17 T.C. 641, the Tax Court held that the Cumberland Public Service Company case controlled, as distinguished from the Court Holding Company case. In that case, the stockholders had negotiated for a sale of the corporate stock and considered a sale of the corporate assets prior to any valid liquidation. The sale was made by the stockholders.

In the case at bar, the deed conveying the warehouse to the purchasers was executed by the stockholders.

 A careful consideration of the facts adduced in the evidence in this case shows that a sale by the corporation was not intended. It is therefore concluded that the plaintiffs are entitled to recover.

A judgment may be tendered by the plaintiffs awarding that relief.