In the Matter of PHILIP ROSEN, Petitioner, v STATE TAX COMMISSION, Respondent.

Third Department, November 4, 1982

### APPEARANCES OF COUNSEL

*Robert S. Raum, P. C.* and *Leinwand, Maron, Hendler & Krause* (*Joel M. Schwartz* of counsel), for petitioners.

*Robert Abrams, Attorney-General* (*Francis V. Dow* and *Jeremiah Jochnowitz* of counsel), for respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

The dispositive issue in this proceeding is whether respondent correctly determined that petitioner's election to report a sale of stock on his 1972 State resident income tax return under the installment method was improper. Petitioner was the sole shareholder of Abbey Chop House, Inc., a corporation which operated a restaurant in a New York City hotel. Only 13 8/10 shares of stock had been issued by the corporation. On June 14, 1972, at a time when the restaurant was losing money and faced with labor problems, petitioner contracted with two individuals for the

sale of 8 7/10 shares of the corporation's stock for $302,500, $32,500 of which was paid at the closing with the remaining $270,000 in promissory notes. Since the purchasers had little cash, they did not want to purchase all of the corporate stock. As a result, the agreement for the sale of the stock specifically stated that the price for the 8 7/10 shares purchased was bargained for on the basis of the value of the corporation's leasehold interest as tenant in the hotel until 1981, a value not challenged by respondent.

Since the purchasers were not buying all of the corporate stock, petitioner chose not to evaluate corporate assets other than the leasehold although, concededly, such assets represented the corporation's accumulated earnings and profits. Accordingly, the stock purchase agreement provided that the purchasers would cause the corporation to redeem the remaining 5 1/10 shares of stock owned by petitioner in exchange for all remaining assets of the corporation which were not desired by the purchasers. This redemption of the remaining 5 1/10 shares took place shortly after the closing on the stock purchase and the value of the assets transferred to petitioner on redemption was $185,343.

In preparing his 1972 State resident income tax return, petitioner reported the full extent of his gain on the redemption of the 5 1/10 shares of the corporation. With regard to the 8 7/10 shares sold, however, petitioner elected to report his gain under the installment method. Under the provisions of section 453 of the Internal Revenue Code in effect in 1972, such an election was permissible whenever the seller received 30% or less of the selling price during the year of sale (26 CFR 1.453-1 [c]). An election by a taxpayer to use the installment method allowed the profit on a sale to be prorated over the period in which payments are received and resulted in the taxpayer paying less tax in the year of sale. The New York State Income Tax Bureau, reasoning that the separate acts of stock sale and redemption were in reality parts of a single transaction whereby petitioner sold all of the corporation's stock, denied petitioner's election to report his gain under the installment method since he received over 30% of the total proceeds for the 13 8/10 shares in 1972, the year of sale. This conclusion resulted in a notice of deficiency

being issued against petitioner for 1972 totaling $33,567.83. Following a hearing, respondent sustained the notice of deficiency and this transferred CPLR article 78 proceeding, seeking to challenge that determination, ensued.

"A taxpayer may engineer his transactions to minimize taxes, but he cannot make a transaction appear to be what it is not" (*Redwing Carriers v Tomlinson,* 399 F2d 652, 659). Thus, as Judge LEARNED HAND wrote, "[t]he question always is whether the transaction under scrutiny is in fact what it appears to be in form" (*Chisholm v Commissioner of Internal Revenue,* 79 F2d 14, 15, cert den 296 US 641). Stated yet another way, the substance of a transaction controls, *unless* there is a legitimate business purpose for the use of a particular form (*Gregory v Helvering,* 293 US 465).

In our view, the part-sale, part-redemption transfers of stock were separate and distinct and not, as concluded by respondent, part of a single integrated transaction. We reach this legal conclusion based on respondent's own findings of fact, which state that the sale and redemption "were intended to enable petitioner to remove his accumulated earnings (while receiving capital gains treatment) and to allow the purchasers of the restaurant business to buy only the leasehold right necessary to run the business but not the accumulated earnings and profits". The legitimate business purpose served by this form of transaction was to enable the purchasers to buy only that portion of the corporate stock as represented those assets of the corporation they desired. The assets petitioner received on redemption were only those assets which the purchasers did not want to buy. Finally, as found by respondent, absolutely no part of the redemption proceeds came from the purchasers.

These factual findings clearly distinguish this proceeding from *Farha v Commissioner of Internal Revenue* (483 F2d 18, affg 58 USTC 526), a case relied on by respondent. In *Farha,* it was found as a matter of fact that the part-sale, part-redemption form used therein was artificial since the parties involved had contracted for the sale of all of the stock and all of the assets of the corporation. The redemp-

tion in *Farha* was found to be nothing more than a second installment whereby the purchaser delayed paying the seller the full amount of the purchase price until the value of some of the corporation's assets could be determined. Since respondent concedes that not all part-sale, part-redemption transactions are, *ipso facto,* single and integrated, the facts found in this proceeding compel us to conclude that the parties used this form for legitimate business purposes. The redemption which followed the partial sale of stock by petitioner was bona fide and not a disguise for part of the sales price. Petitioner therefore properly elected to report his gain on the sale of the 8 7/10 shares of stock under the installment method.

Accordingly, respondent's determination sustaining the notice of deficiency must be annulled, without costs, and the matter remitted to respondent for further proceedings not inconsistent herewith.

YESAWICH, JR., J. (dissenting). Because this case appears to me to be factually indistinguishable from *Farha v Commissioner of Internal Revenue* (483 F2d 18, affg 58 USTC 526), I respectfully dissent. No appreciable difference exists between the *Farha* sale-redemption scheme, which was found to be a unitary transaction, and the technique petitioner employed. Indeed, the contracts in the two cases are virtually identical.

The fundamental purpose of the two-step transaction was to bring all 13 8/10 shares within the purchaser's control in accordance with the terms of a *single* contract. Redemption occurred *immediately* after the sale of the 8 7/10 shares. That the purchaser did not provide the funds for the redemption does not impair the Tax Commission's decision; in *Farha,* the buyer also expressly contracted to cause the corporation to redeem the balance of the seller's stock. And petitioner's desire to obtain capital gains treatment on the proceeds of the redemption, while readily understandable, was not a legitimate independent business purpose for bifurcating this sale. In my view, respondent reasonably perceived the one objective of this integrated transaction to be a complete and indivisible sale of petitioner's business for an amount in excess of the 30% limit required for installment treatment. We are required

to confirm the Tax Commission's determination if there exist "any facts or reasonable inferences from the facts to sustain it" (*Matter of Grace v New York State Tax Comm.*, 37 NY2d 193, 195). I believe this is such a case. Accordingly, the determination should be confirmed and the petition dismissed.

MAIN, CASEY and MIKOLL, JJ., concur with MAHONEY, P. J.; YESAWICH, JR., J., dissents and votes to confirm in a separate opinion.

Determination annulled, without costs, and matter remitted to respondent for further proceedings not inconsistent herewith.