ED W. AND CHARLOTTE B. BUFORD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Buford v. Commissioner
Docket No. 26100-92
United States Tax Court
T.C. Memo 1994-171; 1994 Tax Ct. Memo LEXIS 175; 67 T.C.M. (CCH) 2710; April 19, 1994, Filed *175 Ed W. Buford, pro se. For respondent: Linda J. Ozkan. POWELL
POWELL
MEMORANDUM OPINION POWELL, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
By notice of deficiency issued September 29, 1992, respondent determined a deficiency in petitioners' 1988 Federal income taxes in the amount of $ 2,855.72. Petitioners filed a timely petition and an amended petition in this Court. Petitioners resided in Baton Rouge, Louisiana, when they filed their petitions. Following concessions, [2] the issue is whether petitioners are entitled to a bad debt deduction for funds that they allegedly advanced to Dixieland Helicopters, Inc. (Dixieland), and which were used to pay their son's educational expenses. *176 The facts may be summarized as follows. During all times relevant to this case, petitioner Ed W. Buford (Ed Sr.) was employed by the State of Louisiana as an engineer, and petitioner Charlotte B. Buford, a registered nurse, was employed by a hospital in Baton Rouge to direct in-service education. The genesis of petitioner' association with Dixieland was in their desire to help their son, Ed W. Buford, Jr. (Ed Jr.), "become a commercial helicopter pilot, own his own company, and earn a livelihood." To that end, petitioners and Ed Jr. (the Bufords) formed Dixieland; Ed Jr. received 50 percent of the stock, and petitioners each received 25 percent. Ed Jr. was president of Dixieland, and Ed Sr. was its vice president, secretary, and treasurer. Ed Jr. was commercially qualified as a fixed-wing and helicopter pilot. The Bufords did not contribute any capital or assets to Dixieland. Petitioners, however, extended Dixieland a $ 15,000 line of credit, evidenced by a series of unsecured promissory notes due January 1, 1988. Each of the notes included the provision that failure to pay this indebtedness at its maturity shall, at the option of the holder of this note, * * * become *177 at once due and exigible. * * * In the event of failure to pay this note at maturity, and of the same being placed in the hands of an attorney at law for collection, the maker, endorser, agree to pay, in addition to principal and interest, as attorney's fees two (2) per cent additional on principal and interest. [3]
Dixieland applied for a Small Business Administration (SBA) loan in the amount of $ 48,000. The Bufords planned that, if the loan were approved, Dixieland would purchase a helicopter with the proceeds. However, the SBA twice rejected the loan application. [4]
*178 While waiting for the SBA loan, the Bufords decided to "enhance ourselves further to make the corporation a more valuable asset" by having Ed. Jr. get training in aircraft repair. On June 1, 1987, Dixieland drew approximately $ 10,000 [5] from the line of credit to pay Ed Jr.'s tuition at Colorado Aero Tec. While he was in school, Ed Jr. worked at part-time jobs, and following his graduation in September 1988 he began working in Alabama as a helicopter pilot. Petitioners realized toward the end of 1987 that they were not going to be repaid. Ed Sr. explained the default on the notes stating that since he [Ed Jr.] had not graduated from school and our expected source of repayment had not materialized like we had anticipated it being at the time the notes were called upon to be due * * *179 * there was no way that the corporation could pay them on demand and there was no basis at that point for asking for an extension and/or modification of payments so that it could be prorated over a longer period of time. That is why at the [December 16, 1987] board meeting * * * we asked that the loan be defaulted.
Petitioners did not institute collection proceedings against Dixieland. Ed Sr. indicated that he did not expect that Ed Jr. could repay the money: "He [Ed Jr.] was driving my car. He was using my telephone credit card and my gas card. He had nothing to attach." On their 1988 Federal income tax return, petitioners claimed a $ 10,000 loss stemming from the transfer. [6] Respondent disallowed the loss. In general, section 166(a) allows a deduction for any debt which becomes worthless within the taxable *180 year. [7] Only a bona fide debt, arising from a "debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money" qualifies for a section 166 deduction. Sec. 1.166-1(c), Income Tax Regs. A note does not in and of itself determine the existence of a bona fide debt. Wolff v. Commissioner, 26 B.T.A. 622, 625 (1932). The basic question is whether the purported lender had a "reasonable expectation of repayment regardless of the success of the business or whether his advances were put at the risk of the corporate venture." Stark v. Commissioner, T.C. Memo. 1982-639. In this regard, we note that Dixieland *181 could not get outside financing, that Dixieland had no capital or assets, that there was no security for the so-called loan, and that no collection activity, though anticipated by the promissory notes, was instituted. These factors indicate that petitioners could not have reasonably expected repayment. See Charles W. Williams Contracting Co. v. Commissioner, T.C. Memo. 1966-93. Furthermore, we may disregard the form of a transaction that has no economic significance and look at the substance of the arrangement. Gregory v. Helvering, 293 U.S. 465 (1935); see also Horn v. Commissioner, T.C. Memo. 1982-741. Although cast in the form of a loan to Dixieland, the realities of the arrangement indicate that the transfer was made by petitioners to Ed Jr., with Dixieland serving as a "convenient conduit" to generate perceived tax benefits. See Elbert v. Commissioner, 45 B.T.A. 685, 690 (1941). When examined with detached scrutiny, the credit line here did not spring from a business purpose but rather from "commendable parental interest". Rothbard v. Commissioner, T.C. Memo. 1957-155; *182 see also Nova v. Commissioner, T.C. Memo. 1993-563. Accordingly, we uphold respondent's disallowance of the deduction. To reflect the concessions by the parties, Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners agree that they are not entitled to deductions for certain expenses they had claimed on Schedule C, and respondent allowed an additional $ 611 as a Schedule A deduction.↩
3. Ed Sr. indicated that the collection provision was included for the benefit of the Internal Revenue Service rather than for purposes of collecting the debt.↩
4. The first application, filed with the Louisiana area SBA, was turned down because another helicopter business in the Baton Rouge area had defaulted on a sizable loan, and the SBA was "very reluctant to do anything that said helicopter." The second application was submitted to the Florida regional SBA office, proposing to set up operations near Panama City. It was rejected without explanation.↩
5. Apparently, $ 10,235 was drawn from the credit line, but petitioners claimed a loss of only $ 10,000. The record does not reveal the manner of the disbursement, but Ed Sr., as treasurer, had authority over corporate funds.↩
6. On their return, petitioners characterized the loss as resulting from the worthlessness of stock in a small business corporation, pursuant to sec. 1244. They subsequently abandoned this argument.↩
7. Sec. 166 distinguishes between business and nonbusiness debts. Even if there were bona fide debts here, the debts would not have been a business debt, as they were not dominantly motivated by petitioners' trade or business. See United States v. Generes, 405 U.S. 93↩ (1972).