NOONAN, Circuit Judge,
concurring in part and dissenting in part:
I concur in parts I-IIB of the opinion. I write separately because I conclude that the record is sufficient to reach the merits of the federal law inquiry under 26 U.S.C. § 6901. I would hold that the transaction between Slone Broadcasting and Berlinet-ta had no economic substance and that the Slone Broadcasting shareholders are transferees under 26 U.S.C. § 6901. Therefore, I would remand to the Tax Court only on the question of state law substantive liability.
The Supreme Court has stated that “[t]he general characterization of a transaction for tax purposes is a question of law subject to review,” even though “[t]he particular facts from which the characterization is to be made are not so subject.” Frank Lyon Co. v. United States, 435 U.S. 561, 581 n. 16, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978). As the opinion correctly articulates, the standard in this circuit is that “[t]he Tax Court’s factual determinations about a transaction’s economic substance are reviewed for clear error, but the legal standards it applies and the application of those standards to the facts are reviewed de novo.” Reddam v. Comm’r, 755 F.3d 1051, 1059 (9th Cir.2014). Based on the facts as found by the Tax Court and reviewed under the applicable standard, I find it .clear that the sale to Berlinetta did not have “any economic substance other than the creation of tax benefits.” Id. (internal quotation mark omitted).
In Owens v. Comm’r, 568 F.2d 1233 (6th Cir.1977), the Sixth Circuit considered a similar sale of a corporation whose only asset was cash and noted that “[w]hen one purports to sell cash in corporate solution the burden is surely particularly severe on the seller to show that the only purpose served is not tax avoidance.” Id. at 1239. The court explained that “[t]he reason for such a heavy burden when the corporation owns just cash is that the corporation has already been effectively liquidated from a corporate law viewpoint, and such a liquidation is a step in the process of winding up a corporation’s affairs.” Id.
The Sixth Circuit examined whether the sale of stock was in fact the sale of the “equity of a business,” distinguishing between sale of a going concern and sale of corporate assets. Id. (“When a stockholder sells his stock, he is selling his proprietary interest in a going concern and not an interest in the corporate assets.”). The court concluded that because the corporation had no ongoing business activity, the corporation “was a lifeless shell at the time of the purported sale of stock.” Id. (“A *609 corporation that is not carrying on business activity can be a ready vehicle for use as ‘nothing more than a contrivance’ in a scheme of illegitimate tax avoidance.” (quoting Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596 (1935))).
The Sixth Circuit also examined the financing for the stock purchase. It noted that the purchasers, who took out a loan to buy the stock, had two alternatives to repay the loan: “they could have withdrawn the cash from the bank account, thereby reducing [the corporation] to an empty corporate shell, and pay the loan immediately,” or “they could have earned profit with [the corporation’s] business, and paid the loan over a period of time.” Id. at 1240. If the purchasers had planned to operate the corporation as a going concern, “[t]he risks of such a business would have led the Bank ... to require collateral, but ... the record does not reveal that collateral was required.” Id. In fact, the purchasers “withdrew all the cash from the [corporation] bank account the same day as the purported sale of stock” in order to repay the loan. Id.
The Sixth Circuit held that because “tax liabilities cannot be altered on the basis of parties exchanging the most fungible commodity of all, cash,” the stock sale should not be respected. Id.
Many of the same factors considered by the Sixth Circuit in Oivens are present in this case. Slone Broadcasting was a corporation with no assets other than cash and a built-in gain tax liability of about $15 million that was sold for cash. There is no dispute in this case that Slone Broadcasting had no business operations at the time of the sale to Berlinetta. The financing scheme was very similar to that in Owens: One of the conditions of the purchase loan from Rabobank was that it be repaid using Slone Broadcasting’s cash, via an irrevocable payment instruction, as soon as Berli-netta acquired Slone. Just as in Owens, the purchaser of Slone Broadcasting borrowed the purchase price, and after closing, immediately withdrew money from the corporate bank account in order to repay the purchase loan. While the Tax Court found that “Berlinetta also held at least $18,459,360 of equity at the time of closing” apart from the loan from Rabobank, the only support in the record for this finding is a law firm opinion letter prepared for Slone Broadcasting and written three months after the stock sale. I would conclude that this finding was clearly erroneous. In any event, it is undisputed that Berlinetta did in fact borrow the purchase price from Rabobank and immediately repaid the loan with Slone Broadcasting’s cash.
Just as in Owens, these undisputed facts are sufficient to draw the legal conclusion that the sale of Slone Broadcasting’s stock was in substance a liquidating distribution to Slone Broadcasting’s shareholders. Thus, the Slone Broadcasting shareholders are “transferees” under 26 U.S-.C. § 6901 as “the shareholder^] of a dissolved corporation.” See 26 C.F.R. § 301.6901-l(b). I would remand to the Tax Court to determine whether the shareholders are substantively liable under Arizona state law.