Samuel **BORNSTEIN** et al., Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

No. 6302.

United States Court of Appeals
First Circuit.

June 23, 1964.

John M. Doukas, Boston, Mass., with whom Maloney, Williams, Baer & Doukas, Boston, Mass., was on brief, for petitioners.

David I. Granger, Atty., Dept. of Justice, with whom Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson and David O. Walter, Attys., Dept. of Justice, were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is another of the Eli Livingstone tax deduction enterprises that have been translated by the courts into deduct now and pay later. The facts are set forth in detail in the Tax Court's opinion, 22 CCH Tax Ct.Mem. 1489 (1963), and do not need repeating except to the extent that they differ from Livingstone situations earlier considered. See, e. g., Goodstein v. Commissioner, 1 Cir., 1959, 267 F.2d 127; Miles v. Livingstone, 1 Cir., 1962, 301 F.2d 99, and cases infra. The substantial difference is that tax-

payer[1] executed recourse notes, hereinafter referred to in the singular, to a bank which actually possessed funds, and bonds not only ostensibly, but actually, appeared momentarily on the scene. On this note, which allegedly generated the loan by which the bonds were purchased, taxpayer paid $34,143 forthwith, allegedly as prepaid interest. The note was to be "secured" by the bonds, and the balance of the "interest" allegedly to become due was to be paid by the bond coupons as they matured. So far, so good. We observe, however, the following significant facts. The note, by its terms, could not be prepaid. Its due date corresponded with the maturity date of the bonds. In the meantime the note provided that the "Bank may transfer this note and deliver the said collateral securities * * * to [a] transferee * * * and the Bank shall thereafter be forever relieved and fully discharged from any liability or responsibility in the matter." In addition, the broker was at liberty to deliver no particular, identified, bonds, so long as it produced the specified number of the denominated issue.

Pursuant to this liberal provision in the note the bank forthwith assigned the note and collateral (if any) to one of Livingstone's robot corporations, and the bonds, for all that can be discovered, disappeared. There was no reason why they should not have. Their absence occasioned no legal injury to taxpayer, who had no right to any bonds until he paid off the note, which, in turn, he could not do until the maturity date. Nor was it injurious to the assignee of the note. It is true that the unavailability of the bonds meant that it had no collateral, and that it could not recover its further interest payments as they, allegedly, became due, but by the same token neither it nor anyone else had any money at risk or at work supporting the bonds. The bonds' initial appearance, like that of the bank, was ephemeral in the true sense of the word, and the coupon interest payments were purely theoretical.

It was equally theoretical that the taxpayer's initial payment was interest upon indebtedness. There was, in fact, no loan, or, at least, no maintained loan. While we do not necessarily agree with the Tax Court's conclusory finding that this was a "sham transaction without commercial substance," we do agree that it was a "sham" so far as fulfillment of the statutory requirements of interest and indebtedness is concerned. To the extent that there was any substance to the matter as a whole it was simply a contract by which taxpayer would receive a certain number of a specified issue of government bonds on their maturity date, for which he made a down payment in advance. All else was window-dressing.

Taxpayer makes a final contention that he knew only the positive facts, and not the countervailing ones, and accordingly believed that there was a real loan. Passing the point that he necessarily knew much of the legal nature of the transaction, and must have been on notice of its unusual features, a taxpayer claiming the benefits of a deduction must depend upon the actual circumstances and not upon subjective good faith. Nichols v. Commissioner, 5 Cir., 1963, 314 F.2d 337; MacRae v. Commissioner, 9 Cir., 1961, 294 F.2d 56, cert. den. 368 U.S. 955, 82 S.Ct. 398, 7 L.Ed.2d 388; see Lynch v. Commissioner, 2 Cir., 1959, 273 F.2d 867, 872. Indeed, this would seem the necessary converse of the principle that if a transaction has bona fide substance, the taxpayer's motives are immaterial. Cf. Granite Trust Co. v. United States, 1 Cir., 1956, 238 F.2d 670, 677–78; Fabreeka Products Co. v. Commissioner, 1 Cir., 1961, 294 F.2d 876, 878; Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596.

The decision of the Tax Court will be affirmed.

---

1. We omit reference to taxpayer's wife, who is a party here simply because husband and wife filed a joint return.