COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

Marne S. WILSON, Marjorie M. Wilson, Lyle C. Wilson and Peggy Wilson, Respondents.

No. 19869.

United States Court of Appeals Ninth Circuit.

Dec. 3, 1965.

John B. Jones, Jr., Acting Asst. Atty. Gen., Meyer Rothwacks, David O. Walter, Michael K. Cavanaugh, Attys., Dept. of Justice, Washington, D. C., for petitioner.

Alfred E. Holland, Sacramento, Cal., for respondents.

Before JERTBERG, Circuit Judge, MADDEN, Judge of the Court of Claims, and DUNIWAY, Circuit Judge.

MADDEN, Judge:

The Commissioner of Internal Revenue seeks review and reversal by this court of a decision of the Tax Court of the United States setting aside income tax deficiencies which the Commissioner had assessed against these taxpayers. No problem relating to the jurisdiction of the Tax Court or of this court is involved.

Our question is whether the Tax Court was right in concluding that when a corporation in which the taxpayers were the sole stockholders formed another corporation, transferred certain assets of the existing corporation to it, and then transferred the stock in the second corporation to the taxpayers, that was not a distribution taxable to the taxpayers as a dividend paid by the first corporation, but was a tax-free transaction pursuant to Section 355 of the Internal Revenue Code of 1954, 26 U.S.Code, 1958 ed., § 355.

One William C. Wilson operated a furniture store business. He died in 1950. His widow and his two sons, who are the taxpayers in this litigation, continued the business as a partnership. In 1955 Wilson's Furniture, Inc., hereinafter called Wilson's Inc., was formed. The assets of the partnership were transferred to the corporation, and all of the stock of the corporation was issued to the two sons, the father's widow being paid for her partnership interest by a note of the corporation to her for $49,-310.31.

In 1958 Wilson's Inc. formed another corporation, Wil-Plan, and transferred to it the conditional sales contracts which Wilson's Inc. had on hand as a result of selling furniture on deferred payments. An automobile owned by Wilson's Inc. was also transferred to Wil-Plan in this transaction. All of the stock in Wil-Plan was distributed to the two taxpayers herein, who, as we have seen, were the sole stockholders in Wilson's Inc. The fair market value of the stock in Wil-Plan delivered to each of the two taxpayers was $69,020.07. The accumulated earnings and profits of Wilson's Inc., at the time of the incorporation of Wil-Plan, were $48,889.98.

The taxpayers did not, in their tax returns for 1958, include any income at-

tributable to the stock in Wil-Plan which had been distributed to them in that year. The Commissioner of Internal Revenue mailed timely deficiency notices to each of them, asserting a deficiency against each of some $11,000. The taxpayers filed in the Tax Court timely petitions for redetermination of the deficiencies. As we have seen, the Tax Court decided in favor of the taxpayers, and the Commissioner seeks, in this court, review and reversal of that decision.

■ Section 355 of the Internal Revenue Code of 1954 is difficult reading and will not be reproduced in this opinion. Its purpose and the purpose of its predecessors is to give to stockholders in a corporation controlled by them the privilege of separating or "spinning off" from their corporation a part of its assets and activities and lodging the separated part in another corporation which is controlled by the same stockholders. Since, after the spin-off, the real owners of the assets are the same persons who owned them before, Congress has been willing that these real owners should be allowed, without penalty, to have their real ownership divided into smaller artificial entities than the single original corporation, if the real owners decide that such a division would be desirable. Congress early learned, however, that shareholders would select the part of the assets of an original corporation which could most readily be converted into cash or its equivalent, spin off those parts into the second corporation, distribute the stock in that corporation to themselves, and thus have available for sale and capital gains tax treatment the stock in that corporation, though in fact what they sold represented accumulated earnings of the original corporation, which earnings, if they had been paid directly to the shareholders of the original corporation, would have been fully taxable to them as dividend income.

■ Section 355 contains, as did its predecessors, a prohibition against the use of the spin-off as a "device for the distribution of the earnings and profits of the distributing corporation or the controlled corporation." § 355(a) (1) (B). The section also contained other requirements which had to be complied with in order to qualify a spin-off as a tax-free transaction. The Commissioner urges that some of these requirements were not complied with but, in view of the position which we take in this opinion, we find it unnecessary to resolve those problems.

As we have indicated above, the general purpose of Congress in sanctioning in proper cases, tax-free spin-offs was to permit the real owners of enterprises to rearrange their units and evidences of ownership to suit their own ideas of how best to carry on their businesses. This purpose of Congress was not expressly written into section 355, but the legislative history of the section shows that it underlay the drafting of the section. In his opinion in Parshelsky's Estate v. C.I.R., 303 F.2d 14 (CA 2), Chief Judge Lumbard recounts the pertinent legislative history of section 355 and its predecessors. We will not indulge in useless repetition of the same material.

■ Both parties to this litigation recognize that, in addition to the requirements for tax-free spin-offs expressly written into section 355, the requirement stated for the Supreme Court of the United States by Mr. Justice Sutherland in the case of Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, is and has been an essential part of the law. That requirement is, briefly stated, that a literal compliance with the provisions of the statute relating to tax-free corporation reorganizations is not enough; that there must be a valid business purpose for the reorganization. We refer again to Parshelsky's Estate, supra, for citations to the extensive literature on this subject.

As we have said, both parties recognize the business purpose requirement stated in Gregory v. Helvering, supra. The taxpayers assert that they had three business purposes in separating the ownership and management of the conditional sales contracts acquired by Wilson's Inc. in the furniture store business and plac-

ing them in Wil-Plan. Here the taxpayer's difficulty is that the Tax Court expressly stated that none of the three business purposes asserted in the Tax Court litigation as the motive for the formation of Wil-Plan was, in fact, a bona fide motive, 42 T.C. 914, 922. We can read no other meaning into the Tax Court's language than that these asserted reasons were nonexistent when Wil-Plan was created, but were afterthoughts presented in the litigation.

In view of the Tax Court's conclusion that the several business purposes asserted by the taxpayer were nonexistent, and the fact that the Tax Court did not find any other business purpose, the taxpayers, in view of their recognition of the necessity of satisfying the Gregory v. Helvering requirement, would have expected to lose their case in the Tax Court. But they won their case. The Tax Court found that they did not have a tax-avoidance purpose in creating Wil-Plan. The Commissioner argued that the tax advantage sought by the taxpayers in creating Wil-Plan was that it gave them the opportunity to sell the stock of Wil-Plan or to liquidate it at some future time and thereby receive a distribution of the earnings and profits of Wilson's Inc. as a capital gain. Answering this argument, the Tax Court wrote:

> The answer to that position is that in the present case we have found that there was no plan or intention to achieve any such result and no attempt to do so has in fact been made.

We seem to be confronted with what may be a unique situation, that of a corporation reorganization which had no business reason and which had no tax avoidance purpose, but which had the effect of removing from the risks and vicissitudes of a retail furniture business accumulated earnings in a form readily convertible by the shareholders into cash, by selling their stock in the spin-off corporation or by liquidating it and receiving and selling those easily liquidated assets. The shareholders have and will continue to have a tax advantage whenever they choose to make use of it, even though, as the Tax Court found, they never thought of the reorganization in terms of a tax advantage.

We think that, in this practical area of taxation, so much in the way of liability for taxes can hardly be allowed to depend solely upon what goes on in someone's mind. If the assets transferred to Wil-Plan had been United States or municipal or high grade corporate bonds, the purpose of the spin-off might well have been the removal of these assets from the risks of the retail furniture business, with the motive of creating security for old age or for their families and without any thought of tax consequences. Yet it would be unfair to shareholders who are fully taxed upon dividends received by them to give such an advantage to the beneficiaries of a spin-off without a business purpose. We suppose that is the reason for the Gregory v. Helvering doctrine. Congress, in enacting section 355 and its predecessors, was trying to give to business enterprisers leeway in readjusting their corporate arrangements to better suit their business purposes. If the rearrangement had that purpose, Congress was willing to concede them some possible tax advantages. If the rearrangement had no business purpose, let the taxes fall where they might.

As we have said, the taxpayers urge in this court, as they did in the Tax Court, that there were business reasons for the creation of Wil-Plan. But the Tax Court held that there were none, and that holding is well supported by the Tax Court's discussion of the evidence. The Commissioner urges in this court, as he did in the Tax Court, that there was a tax avoidance motive in creating Wil-Plan. But the Tax Court held that there was no such motive. Its holding was based upon the oral testimony of one of the taxpayers, which testimony the court said "rang true." We cannot find that that holding is clearly erroneous.

We conclude, however, that even if there is no tax avoidance motive, a reorganization having no business reason does not result in the tax advantages

which section 355 confers upon those who satisfy the legal requirements for its benefits.

The decision of the Tax Court is reversed, and the case is remanded to the Tax Court with a direction to dismiss the taxpayers' petitions for redetermination of deficiencies.